UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

-------------------------------------------------------x

PAULA DASHIEL,                              :

              Plaintiff,              :

    -against-                              :

THE PRUDENTIAL INSURANCE         :
COMPANY OF AMERICA,                   :

           Defendant.              :

-------------------------------------------------------x

2003 NOV -5  A II: 30

US DISTRICT COURT
HARTFORD CT.

Case No.  3:02-CV-01231 (CFD/TPS)

November 4, 2003

## DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

PROSKAUER ROSE LLP
Edward Cerasia II
Mary Elizabeth Deno
One Newark Center, 18th Floor
Newark, New Jersey 07101
973.274.3200

-and-

ZELDES, NEEDLE & COOPER
Jonathan B. Orleans
1000 Lafayette Boulevard
Bridgeport, Connecticut 06601
203.333.9441

Attorneys for Defendant
The Prudential Insurance Company of America

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ...........................................................................................1

II.  BACKGROUND FACTS ...............................................................................................1

III. ARGUMENT.................................................................................................................6

    A.   THE APPLICABLE RULE 26(c) STANDARD .........................................................6

    B.   DASHIEL HAD NO JUSTIFICATION TO REFUSE TO APPEAR FOR
        HER SCHEDULED DEPOSITION AND SHE HAD NOT DEMONSTRATED
        GOOD CAUSE FOR A PROTECTIVE ORDER .........................................................7

        1.   Dashiel Is Not Entitled To Receive All Documents And
            Information Requested Before She Appears For Deposition ................................7

        2.   Dashiel Has Not Demonstrated That Taking Her Deposition
            Before Or Without Any Additional Discovery Responses From
            Prudential Would Prejudice Or Harm Her................................................................9

        3.   Dashiel's Belated Review Of Prudential's Discovery
            Responses And Mischaracterization Of Those Responses
            Mitigates Any Good Cause For Issuing A Protective Order ...................................10

IV.  CONCLUSION.............................................................................................................13

## I. <u>PRELIMINARY STATEMENT</u>

Defendant The Prudential Insurance Company of America ("Prudential") respectfully submits this memorandum of law in opposition to plaintiff Paula Dashiel's ("Dashiel's") Fed. R. Civ. P. 26(c) motion for a protective order to prevent Prudential from taking her deposition. The basis for Dashiel's motion – which was filed on the day of her scheduled deposition and many months after her counsel received Prudential's written discovery responses – is her counsel's belated dissatisfaction with Prudential's objections and responses to Dashiel's written discovery demands. But even assuming, *arguendo*, that Prudential's responses are deficient – which Prudential denies – that does not provide a basis for granting Dashiel's motion. In short, Dashiel has not remotely satisfied her burden of demonstrating the "good cause" necessary for obtaining a Rule 26(c) protective order. Therefore, the Court should deny her motion.

## II. <u>BACKGROUND FACTS</u>

On September 7, 1999, Prudential Real Estate and Relocation Services ("PRERS") hired Dashiel as an International Services Coordinator ("ISC") in Shelton, Connecticut. (Am. Compl., ¶ 10.) She remained in that position until October 31, 2001, when her job was eliminated and her employment terminated as a result of the closing of the Shelton office. (<u>Id.</u>, ¶ 29.)

In or around November 1999, PRERS first announced a major reorganization; management decided to consolidate and relocate operations. (<u>Id.</u>, ¶ 15.) In or about March 2001, PRERS notified Dashiel that it was going to eliminate the ISC position in Shelton (which it did in October 2001) and would create new International Transportation Counselor ("ITC") positions in Valhalla, New York. (<u>Id.</u>, ¶¶ 20, 22, 28, 31.) Management advised Dashiel that she, like all of the other employees who held the defunct ISC position, could post for the new ITC

jobs. (Id., ¶¶ 19, 31.) On April 16, 2001 Dashiel notified PRERS that she was not interested in doing so. (Declaration of Mary Elizabeth Deno, Esq. ("Deno Decl."), Ex. P.)

By letter dated August 31, 2001, PRERS formally notified Dashiel that, due to the previously announced reorganization, her job was being eliminated and that her employment would be terminated effective October 31, 2001, unless she obtained another position within the company. (Deno Decl., Ex. Q.) In that letter, PRERS informed Dashiel of her eligibility for a severance package and her eligibility to post for other vacant positions. (Id.)

On October 2, 2001, Dashiel applied and interviewed for an ITC position in Valhalla. (Am. Compl., ¶ 36.) The next day, however, Dashiel voluntarily "withdrew her application" for that job and, as a result, PRERS did not offer her that job. (Id., ¶¶ 38, 40, 41.) Consequently, PRERS terminated Dashiel's employment. (Deno Decl., Ex. Q; see Am. Compl., ¶ 49.)

After receiving notice of her upcoming termination, Dashiel filed a charge of race discrimination with the Connecticut Commission on Human Rights (the "CHRO"). (Deno Decl., Ex. R.) On December 28, 2001, after completing its initial merit assessment review, the CHRO issued a decision dismissing Dashiel's discrimination claim. (Id., Ex. S.) Specifically, the CHRO found that "[t]here is no evidence to indicate that you were subjected to unequal terms and conditions of employment, denied a transfer to another position or terminated due to your race or color." (Id.)

Dashiel filed this lawsuit against Prudential on July 17, 2002. Prudential then moved to dismiss the Complaint. In response to that motion, Dashiel sought leave to amend the Complaint, which was granted with Prudential's consent. Thereafter, Dashiel served her Amended Complaint, which alleges race discrimination under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq., and asserts various common law claims, including promissory

estoppel, breach of implied contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, and misrepresentation. On April 22, 2003, Prudential served its Answer and Affirmative Defenses to the Amended Complaint.

Before Prudential answered the Amended Complaint, Dashiel served it with her First Request for Interrogatories (April 1, 2003). Thereafter, she served her Second Request for Interrogatories (May 2, 2003) and her First Request For Production of Documents (May 21, 2003). Dashiel's attorney, Michael Melly, consented to Prudential's request for extensions of time to respond to Dashiel's discovery requests, because Prudential was having difficulty locating and gathering responsive information and documents in light of the fact that the Shelton facility closed in 2001, and the fact that Dashiel's working unit no longer existed. (Deno Decl., ¶ 3.) Because of the confidential nature of the information and documents Prudential intended to produce, on June 19, 2003, Prudential's counsel sent Attorney Melly a draft Stipulation and Order of Confidentiality Governing The Treatment of Confidential Material ("Confidentiality Stipulation") for his review. (Deno Decl., ¶ 4 & Ex. A.) Attorney Melly, however, waited more than two months to sign and return the Confidentiality Stipulation; Prudential's counsel did not receive it until August 28, 2003. (Deno Decl., ¶ 4.)[1] Nevertheless, Prudential produced its written responses to Dashiel's First Request For Interrogatories on June 23, 2003, and its written responses to Dashiel's First Request For Production of Documents and Second Request For Interrogatories on July 29, 2003. (Id., ¶ 5 & Ex. B.)

---

[1]     Prudential filed the executed Confidentiality Stipulation with the Court on September 24, 2003. By Order dated October 8, 2003, the Court approved that Stipulation, with some modifications. (Docket Sheet Entry No. 28.)

Meanwhile, since early-May 2003, Prudential's counsel had repeatedly contacted Attorney Melly's office to schedule Dashiel's deposition. (Id., ¶ 6.) Indeed, as set forth more fully in Attorney Deno's Declaration, on May 6, 2003, Prudential first noticed Dashiel's deposition for June 30, 2003. (Id., ¶ 6 & Ex. C.) Between May 2003 and September 2003, Attorney Deno had no less than 6 telephone conversations with Attorney Melly and his office and sent at least 8 letters and e-mails to his office concerning the scheduling of Dashiel's deposition. (Id., ¶¶ 6–16.) After almost five months of calling and writing letters to Attorney Melly and his former paralegal, Melissa Grant, Prudential re-noticed Dashiel's deposition for October 15, 2003. (Id., ¶ 16.) Yet at no time during those conversations or communications did Attorney Melly or his office ever raise any purported deficiencies in Prudential's June and July 2003 written discovery responses and objections – let alone suggest that such deficiencies justified postponement of Dashiel's deposition going forward. (Id., ¶ 21.)

On September 8, 2003, Prudential's counsel learned from Ms. Grant that Attorney Melly no longer worked for The Employment Law Group, and that Eugene Axelrod would handle this case. (Id., ¶ 12.) On September 22, 2003, Attorney Deno spoke with Attorney Axelrod, who said that Dashiel had retained Attorney Melly as her counsel and that Attorney Axelrod would withdraw as counsel of record, which he eventually did. (Id., ¶ 15.)

On September 23, 2003, Attorney Deno finally received an e-mail from Attorney Melly advising that he had been retained as Dashiel's sole attorney and to forward all correspondence to his attention. (Id., ¶ 16 & Ex. K.) Not having received any contact information for Attorney Melly, other than his e-mail address, Attorney Deno sent an e-mail to Attorney Melly on September 25, 2003, requesting his new contact information and attaching another Notice of Deposition for Dashiel for October 15, 2003. (Id.) That same day, Attorney Melly e-mailed

4

Attorney Deno his contact information and asked when Prudential was going to serve the documents that had been withheld pending his execution of the Confidentiality Stipulation. (Id., ¶ 17 & Ex. L.) On October 1, 2003, Attorney Deno sent Prudential's documents to Attorney Melly by overnight mail. (Id.)

Then, on October 10, 2003, Attorney Melly called Attorney Deno and, for the first time since he received Prudential's written responses which were served on June 23, 2003 and July 29, 2003, raised several discovery disputes and challenged Prudential's discovery responses as deficient. (Id., ¶ 18.) When Attorney Deno asked Attorney Melly to put his discovery disputes in writing so that Prudential could adequately respond and try to resolve the issues, Attorney Melly stated that doing so "would be a waste of time" and that "from now on it would be about motion practice." (Id.) Attorney Melly took that stance despite the fact that he admittedly had not yet read Prudential's written responses to Dashiel's discovery requests. (Id.) Attorney Deno told him that he should do so and then contact her or Edward Cerasia II, Esq. to confer about the discovery disputes — as required under the Federal Rules — prior to filing a motion to compel. (Id., ¶ 18 & Ex. M.)

On October 13, 2003, Attorneys Melly and Deno conferred about the alleged deficiencies in Prudential's discovery responses. (Id., ¶ 19.) Attorney Deno informed Attorney Melly that Prudential believed that its objections were justified and responses were sufficient, but that she would work with Prudential to obtain certain additional responsive documents and information, to the extent that they exist. (Id.) At the end of that telephone conversation — which was less than two days before Dashiel's deposition — Attorney Melly asked to continue the deposition until Prudential produced supplemental responses. (Id., ¶ 20.) Attorney Melly claimed that a continuance was necessary because, without further discovery production, Dashiel would be

5

unable to adequately answer questions at her deposition, and thus she would be prejudiced and the parties would waste time and money. (Id.) Attorney Deno advised Attorney Melly that she did not believe that there was a justifiable basis to continue Dashiel's deposition because Prudential only sought to examine Dashiel about *her* factual allegations in the Amended Complaint and what information *she* knows or has to support those allegations. (Id.) The following day, October 14, 2003, Attorney Deno confirmed with Attorney Melly that Prudential intended to move forward with Dashiel's deposition on October 15. (Id., ¶ 22.) Upon hearing that information, Attorney Melly advised her that neither he nor Dashiel would appear on October 15, and that he would file a motion for a protective order to prevent Prudential from taking Dashiel's deposition until Prudential produced more documents and information to his satisfaction. (Id., ¶ 22 & Ex. N.) Attorney Melly filed Dashiel's Rule 26(c) motion on October 15, 2003.

### III. ARGUMENT

### A. THE APPLICABLE RULE 26(c) STANDARD

Upon a showing of "good cause," a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c); Bridge C.A.T. Scan Assoc. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983) (holding that an issuance of a protective order is appropriate to prevent "injury, harassment or abuse of the court's processes"). "[T]he burden is upon the moving party seeking . . . a protective order to show good cause." Penthouse Int'l, Ltd. v. Playboy Enter., Inc., 663 F.2d 371, 391 (2d Cir. 1981); Bell v. Charles GUY d/b/a Car City of Danbury, No. 399-CV-02526 (PCD), 2000 WL 33381017, *1 (D. Conn. Sept. 13, 2000). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad

6

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

the Rule 26(c) test." Cippollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)

quoted in Bell, 2000 WL 33381017, at *1. Dashiel has failed to meet this stringent burden.

Therefore, the Court should deny her motion for a protective order and direct her to appear for

her deposition.

**B.     DASHIEL HAD NO JUSTIFICATION TO REFUSE TO APPEAR FOR
        HER SCHEDULED DEPOSITION AND SHE HAS NOT DEMONSTRATED
        GOOD CAUSE SUFFICIENT FOR A PROTECTIVE ORDER**

In support of her motion, Dashiel argues, in a conclusory manner, that she would be

"substantially prejudiced by testifying at deposition without the benefit of important and relevant

information supporting her claims." (Memorandum Of Law In Support Of Plaintiff's Motion

For A Protective Order ("Pl.'s Mem.") at 4.) Without providing any specific examples, Dashiel

claims that if her deposition proceeds before or without supplemental discovery responses from

Prudential, "the record [transcript] would be devoid of valuable facts and testimony relevant to

the issues and claims." (Id.) Accordingly, she requests that this Court issue a protective order

indefinitely continuing her deposition "pending receipt of relevant information and items of

discovery." (Id. at 5.) Dashiel's argument fails for several reasons.

**1.     Dashiel Is Not Entitled To Receive All Documents And
        Information Requested Before She Appears For Deposition**

First, even assuming, *arguendo*, that Prudential's discovery responses are somehow

deficient — which Prudential denies — Dashiel's argument ignores the fact that she is not entitled

to *all* documents and information in Prudential's possession before Prudential can take her

deposition. Indeed, Fed. R. Civ. P. 26(d), which governs the "Timing and Sequence of

Discovery," expressly provides in pertinent part that, "[u]nless the court upon motion, for the

convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of

*discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery.*" (Emphasis added). Simply stated, discovery by one party cannot suspend discovery being conducted by any other party.

Struthers Scientific and Int'l Corp. v. General Foods Corp., 290 F. Supp. 122 (S.D. Tex. 1968), is instructive in this respect. In that case, the plaintiff filed a motion to vacate the defendant's notice of depositions and/or to stay, postpone or enlarge the time for taking depositions pending the defendant answering plaintiff's interrogatories. Id. at 127. In denying the plaintiff's motion, the court stated in words equally applicable to the present case that "the failure to answer plaintiff's interrogatories provides no grounds for vacating or staying defendant's notice of taking depositions" and that such ruling "is consistent with . . . the longstanding rule that a plaintiff cannot be reluctant." Id. at 128. Similarly, in Nedd v. Thomas, 47 F.R.D. 551, 554 (M.D. Pa. 1969), plaintiffs moved for a protective order to stop the defendant from taking depositions "until thirty days after [the defendant] replies to plaintiff's . . . interrogatories." Rejecting the plaintiffs' motion, the court held that "[t]o now postpone the depositions sought by the [defendant] would only add unnecessary delay to the proceedings" and therefore "depositions should not be stayed pending answer of plaintiffs' interrogatories." Id. at 554; see also Ores v. Willow West Condominium, No. 94-C-4717, 1995 WL 758397, *2 (N.D.Ill. Dec. 18, 1995) (denying plaintiffs' motion for a protective order to prevent the depositions of plaintiffs, holding that "'plaintiffs must submit to discovery in litigation they initiate'") (citation omitted).

Unlike Struthers and Nedd, where the defendants had not yet responded to the plaintiffs' discovery, Prudential *has* provided Dashiel with information and documents in response to her

8

discovery requests. A protective order should not issue to block Dashiel's deposition simply because her counsel is not satisfied with Prudential's responses and has requested supplementation — which Prudential anticipates providing. Notably, Dashiel has not cited *any* case law to support her position, and she also completely ignores the fact that Attorney Melly's own delay in signing the Confidentiality Stipulation and his much-belated review of Prudential's written discovery responses is what precipitated this unnecessary motion practice less than a month before the close of discovery.

There is simply no rule or custom allowing a plaintiff to delay her deposition until the defendant has completed its disclosure. Indeed, under the Federal Rules, both parties are permitted to conduct discovery simultaneously and in any order. Fed. R. Civ. P. 26(d). There is no support whatsoever for Dashiel's argument that she is *entitled* to all discovery responses to her liking before she is deposed. Thus, her motion for a protective order should be denied.

> **2.    Dashiel Has Not Demonstrated That Taking Her Deposition Before Or Without Any Additional Discovery Responses From Prudential Would Prejudice Or Harm Her**

In her memorandum, Dashiel makes blanket allegations that she would be "substantially prejudiced by testifying at deposition" because Prudential would have a "greater likelihood of obtaining summary judgment" and would have "open game for cross-examination of plaintiff later in the case." (Pl.'s Mem. at 4.) But such "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning," are not enough to meet the burden for issuance of a protective order. Bell, 2000 WL 3331017, at *1. At Dashiel's deposition, Prudential intends to examine her about *her* factual allegations in the Amended Complaint and the information *she* has in her head to support those allegations — *not* what Dashiel may learn or come to know about based on her review of Prudential's documents concerning other former or current employees of

9

PRERS, which is what is in dispute. To that end, Dashiel has wholly failed to cite any specific

examples why she would be unable to answer deposition questions and thus be prejudiced,

burdened, embarrassed, oppressed, forced to incur considerable expense or otherwise injured by

Prudential taking her deposition prior to any supplemental production of documents. Prudential

submits that she cannot do so. Accordingly, the Court should deny her motion for a protective

order. See In re George Corp., Civ. A. No. 86-0154, 1986 WL 10554, at *3 (E.D. Pa. Sept. 19,

1986) ("A mere showing of some embarrassment, annoyance or expense . . does not require the

issuance of a protective order.").

3.    **Dashiel's Belated Review Of Prudential's Discovery
      Responses And Mischaracterization Of Those Responses
      Mitigates Any Good Cause For Issuing A Protective Order**

The crux of Dashiel's argument is that Prudential's discovery responses are allegedly so

deficient that she cannot submit to a deposition until she is satisfied with Prudential's production.

(See Pl.'s Mem. at 4-5.) As demonstrated below, Dashiel's argument ignores her own counsel's

delay and mischaracterizes Prudential's discovery responses. These facts undermine any

showing of good cause by Dashiel.

First, Dashiel completely ignores the fact that Prudential served its written discovery

responses on June 23, 2003 and July 29, 2003 — *over 3 months before* Attorney Melly first raised

any issue as to alleged deficiencies. She also completely ignores the fact that the delay in

production of documents by Prudential was caused in large part Attorney Melly's delay in

reviewing and signing the Confidentiality Stipulation. While Attorney Melly states that he did

not sign the Stipulation because he was on trial from July 3, 2003 through July 17, 2003, (Pl.'s

Mem. at 2 n.1), he fails to account for the fact that he received the draft Stipulation on June 19,

2003 (several weeks before his trial) and then did not review the Stipulation for *over a month*

10

*after* his trial ended. (Deno Decl., ¶¶ 4, 9 & Exs. A, F.) Indeed, had he reviewed and signed the Stipulation in a more timely fashion, he would have had all of Prudential's documents, in addition to the written responses served in June and July, and could have raised the alleged discovery disputes months ago and not 2 days before Dashiel's scheduled deposition — a deposition for which Prudential's counsel spent more than 4 months to secure a date.

Moreover, Dashiel has wholly mischaracterized Prudential's discovery responses. Dashiel argues that Prudential objected to every interrogatory and request for production, thus obstructing discovery. (Pl.'s Mem. at 4.) But Dashiel fails to disclose that, notwithstanding those objections (which Prudential believes are justified), it did provide information and documents relevant to this case, including Dashiel's personnel file, documents concerning the possible relocation of the PRERS group to Phoenix, documents concerning the closing of the Shelton facility, documents regarding Dashiel's termination and opportunities she had to post for other jobs, the PRERS Relocation Policy, Prudential's Employee Handbook, and all of Prudential's Human Resource Policies. In addition, Prudential produced a comprehensive list setting forth the following information for the *501 employees* in the Shelton facility: each employee's name, position, date of hire, salary grade, whether he/she has been terminated, termination date (if applicable), gender, race and whether they transferred to another location upon the closing of the Shelton facility. Thus, contrary to Dashiel's allegations, Prudential produced a significant amount of information in response to her discovery requests. Most significantly, Prudential produced information concerning the only other similarly-situated ISC in Shelton – a Caucasian employee who also was terminated on October 31, 2001 after her position was eliminated. Prudential does not have to produce documents or information concerning employees who were not similarly-situated to Dashiel or who worked outside of her

work unit. <u>E.g.</u>, <u>Sundaram v. Brookhaven Nat'l Lab.</u>, 1996 WL 563829, at *2 (E.D.N.Y. March

11, 1996) (holding that discovery about an "employer's practices concerning employees other

than plaintiff" must be limited to the plaintiff's "'employing unit or work unit'") (citation

omitted); <u>Earley v. Champion Intern. Corp.</u>, 907 F.2d 1077, 1084 (11th Cir. 1990) (denying

plaintiff's request for corporate-wide discovery of a reduction-of-force implemented throughout

various corporate employing units, and limiting discovery to plaintiff's "employing unit").[2]

Dashiel's failure to acknowledge her own counsel's contribution to the delay in

Prudential's disclosure, and her mischaracterization of that disclosure, are additional grounds for

the denial of her Rule 26(c) motion.

---

[2]    While Dashiel seeks additional documents and information from Prudential, (<u>see</u> Pl.'s
Mem. at 2-5), she fails to acknowledge that she is only entitled to discovery concerning
similarly-situated employees in her work unit, (Deno Decl., ¶ 23 & Ex. O), that she is not
entitled to documents that are protected from disclosure by the attorney-client privilege or work
product doctrine, and that Prudential cannot produce documents that do not exist.  <u>Sundaram</u>,
1996 WL 563829, at *2; <u>Earley</u>, 907 F.2d at 1084; <u>United States v. Adleman</u>, 134 F.3d 1194,
1196 (2d Cir. 1998) ("The work product doctrine is intended to preserve a zone of privacy in
which a lawyer can prepare and develop legal theories and strategies 'with an eye toward
litigation,' free from unnecessary intrusion by his adversaries.").

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Dashiel's Rule 26(c) motion for a

protective order; order Dashiel to appear for her deposition; grant to Prudential its costs,

including attorneys' fees, in connection with this motion pursuant to Fed. R. Civ. P. 37(a)(4); and

grant to Prudential such other and further relief 0as the Court may deem just and proper.

Dated this 4th day of November 2003, at Newark, New Jersey.

Respectfully submitted,

PROSKAUER ROSE LLP

By _Edward Cerasia II_
    Edward Cerasia II
       Fed. Bar No. ct 13096
    Mary Elizabeth Deno
       Fed. Bar No. ct 24335
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
E-mail:  ecerasia@proskauer.com
E-mail:  mdeno@proskauer.com


Attorneys for Defendant
The Prudential Insurance Company of America

Local Counsel:

Jonathan B. Orleans
  Fed. Bar No. ct 05440
ZELDES, NEEDLE & COOPER
1000 Lafayette Boulevard
Bridgeport, Connecticut 06601
203.333.9441
E-mail:  jorleans@znclaw.com

13

## CERTIFICATION OF SERVICE

I hereby certify that on November 4, 2003, I caused to be served true and correct copies of Defendant The Prudential Life Insurance Company of America's Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order and Declaration of Mary Elizabeth Deno, Esq., together with Exhibits A through S, by Federal Express, prepaid, on the following counsel for plaintiff:

>Michael J. Melly, Esq.
>143 Oneco Avenue #4
>New London, Connecticut 06320

Mary Elizabeth Deno