UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- x
                                                  :

PAULA DASHIEL,                       :

                 Plaintiff,                :     Case No.  3:02-CV-01231 (CFD/TPS)

        -against-                        :

THE PRUDENTIAL INSURANCE      :     March 1, 2004
COMPANY OF AMERICA,           :

                 Defendant.          :

------------------------------------------------------- x

**DEFENDANT THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR A PROTECTIVE ORDER**

**I. PRELIMINARY STATEMENT**

Defendant The Prudential Insurance Company of America ("Prudential") respectfully submits this memorandum of law in support of its Fed. R. Civ. P. 26(c) motion for a protective order to narrow the scope of plaintiff Paula Dashiel's ("Dashiel's") Fed. R. Civ. P. 30(b)(6) Deposition Notice ("Notice").

In this case, Prudential has provided or agreed to provide Dashiel with discovery and witnesses concerning, *inter alia*, the circumstances surrounding the closing of Prudential Real Estate and Relocation Services' ("PRERS's") office in Shelton, Connecticut and the termination of her employment with PRERS, as well as information and documents concerning employees who were similarly-situated to her. In the Notice, however, Dashiel seeks nationwide and/or global discovery concerning Prudential employees who were not similarly-situated to her and information and practices that have no relationship whatsoever to her employment or the

- 2 -

termination of her employment. Consequently, the Notice is overly broad, unduly burdensome, and seeks testimony that is neither relevant to the subject matter of this case nor reasonably likely to lead to the discovery of admissible evidence. As demonstrated below, Prudential has shown "good cause" under Rule 26(c); therefore, the Court should grant this motion and narrow the subject matter in the Rule 30(b)(6) Notice.

## II. BACKGROUND FACTS

On September 7, 1999, PRERS hired Dashiel as an International Services Coordinator ("ISC") in Shelton, Connecticut. (Am. Compl., ¶ 10.) She remained in that position until October 31, 2001, when her job was eliminated and her employment terminated (along with several hundred other employees) as a result of the closing of the Shelton office. (Id., ¶ 29.)

In or around November 1999, PRERS first announced a major reorganization; management decided to consolidate and relocate operations. (Id., ¶ 12.) As a result, by letter dated January 1, 2001, Prudential offered Dashiel an opportunity to transfer to Phoenix, Arizona, with the same job title and salary. (Id., ¶ 14; Deno Decl., Ex. E.) Due to a change in "business strategy," however, Prudential rescinded its offer to transfer Dashiel (and others who were similarly-situated) to Phoenix, by letter dated January 11, 2001. (Am. Compl. ¶ 15; Deno Decl., Ex. F.)

In or about March 2001, PRERS notified Dashiel that it was going to eliminate the ISC position in Shelton (which it did in October 2001) and would create new International Transportation Counselor ("ITC") positions in Valhalla, New York. (Id., ¶¶ 18-19.) Management advised Dashiel that she, like all of the other employees who held the defunct ISC position, could post for the new ITC jobs. (Id., ¶ 25) On April 16, 2001, Dashiel thanked PRERS management for "asking [her] to reapply for the (ISC) ITC position," but said that she

had "decided [she was] not interested in making a lateral move at [that] time." (Deno Decl., Ex. G.)

By letter dated August 31, 2001, PRERS formally notified Dashiel that, due to the previously announced reorganization, her job was being eliminated and that her employment would be terminated effective October 31, 2001, unless she obtained another position within the company. (Deno Decl., Ex. H.) In that letter, PRERS informed Dashiel of her eligibility for a severance package and her eligibility to post for other vacant positions. (Id.)

On September 26, 2001, Dashiel inquired as to whether the ITC position in the Valhalla facility was still available; the position was still available and an interview was scheduled. (Deno Decl., Ex. I.) On October 2, 2001, Dashiel applied and interviewed for an ITC position in Valhalla. (Am. Compl., ¶ 27.) The next day, however, Dashiel voluntarily "withdrew her application" for that job and, as a result, PRERS did not offer her that job. (Id., ¶¶ 27-28.) Because Dashiel did not apply for and obtain another position with PRERS, it terminated her employment, effective October 31, 2001. (Deno Decl., Ex. H; see Am. Compl., ¶ 29.)

After receiving notice of her upcoming termination, Dashiel filed a charge of race discrimination with the Connecticut Commission on Human Rights (the "CHRO"). (Deno Decl., Ex. J.) On December 28, 2001, after completing its initial merit assessment review, the CHRO issued a decision dismissing Dashiel's discrimination claim. (Id., Ex. K.) Specifically, the CHRO found that "[t]here is no evidence to indicate that you were subjected to unequal terms and conditions of employment, denied a transfer to another position or terminated due to your race or color." (Id.)

Dashiel filed this lawsuit against Prudential on July 17, 2002. Prudential then moved to dismiss the Complaint. In response to that motion, Dashiel sought leave to amend the

Complaint, which was granted with Prudential's consent. Thereafter, Dashiel served her Amended Complaint, which alleges race discrimination under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, in connection with her termination and asserts various common law claims, including promissory estoppel, breach of implied contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, and misrepresentation. On April 22, 2003, Prudential served its Answer and Affirmative Defenses to the Amended Complaint.

In April and May 2003, Dashiel served Prudential with her First Request for Interrogatories (April 1, 2003), her Second Request for Interrogatories (May 2, 2003) and her First Request for Production of Documents (May 21, 2003). In response to these discovery requests, Prudential provided Dashiel with information and documents relevant to this case, including, for example, Dashiel's personnel file, the personnel file of Joan Schell (the only other employee who held the position of ISC in the Shelton office and who, like Dashiel, was terminated when that position was eliminated in October 2001), the personnel files of Ann Knotts, Ellen Shelovsky, Patricia Hardy, Sigal Reingold, Jan Kessler and Priscilla Dabbs (ITCs in either Shelton or Valhalla who would have reported to the same supervisor as Dashiel if she had assumed an ITC job in Valhalla), documents concerning the possible relocation of the PRERS group to Phoenix, documents concerning the closing of the Shelton facility, documents regarding Dashiel's termination and opportunities she had to post for other jobs, the PRERS Relocation Policy, Prudential's Employee Handbook, and all of Prudential's Human Resource Policies. In addition, Prudential produced a comprehensive list setting forth the following information for the *501 employees* in the Shelton facility at the time of Dashiel's termination: each employee's name, position, date of hire, salary grade, whether he/she has been terminated,

termination date (if applicable), gender, race and whether they transferred to another location upon the closing of the Shelton facility.

The original discovery cut-off date in this case was set for November 14, 2003. After over 5 months of trying to schedule Dashiel's deposition, her attorney, Michael Melly, finally agreed to produce Dashiel for deposition on October 15, 2003. The day before Dashiel's deposition, however, Attorney Melly filed a motion for a protective order to prevent Prudential from taking her deposition. The Court denied that motion on December 3, 2003.[1] While that motion was pending, Dashiel filed a motion for a 60-day enlargement of time to conduct discovery, up to and including, January 14, 2004. The Court granted that motion on November 20, 2003, and Dashiel's deposition was taken on January 14, 2003.

On January 14, 2004, Attorney Melly informed Prudential that, on January 13, 2004, he filed, on Dashiel's behalf, a second motion for a 60-day enlargement of time to conduct discovery, which Prudential opposed on January 21, 2004. On February 2, 2004, the Court issued an Order granting a final extension of discovery, up to and including March 14, 2004.

On January 24, 2004, Dashiel served Prudential with the Notice, which contains a 41-paragraph schedule seeking corporate-wide discovery relating to employment decisions and businesses at Prudential that have absolutely nothing to do with the employment decision complained of in this case. (Deno Decl., ¶ 5 & Ex. B.) Moreover, the Notice seeks testimony about business divisions and subsidiaries that are completely independent of PRERS, where Dashiel worked, and for time periods that are well outside of the time period that is relevant in this case. (Id.) Prior to serving the Notice, Dashiel did not notice and take any specific

---

[1] The procedural history underlying some of the earlier discovery disputes in this case are set forth in more detail in Defendant The Prudential Insurance Company Of America' Memorandum Of Law In Opposition To Plaintiff's Motion For A Protective Order, filed on November 4, 2003, which Prudential incorporates by reference herein.

- 5 -

Prudential representatives' deposition — even though she knows who has personal knowledge of the circumstances surrounding the end of her employment. Instead, she is using a Rule 30(b)(6) Notice as a fishing expedition to obtain unecessary and wholly irrelevant information.

On January 28, 2004, counsel for Prudential sent Attorney Melly a letter outlining its objections to the Notice in an effort to resolve the discovery issues without resorting to unnecessary motion practice. (Deno Decl., ¶ 6 & Ex. C.) Specifically, Prudential agreed to produce a witness or witnesses to testify as to the following subject matters on March 1 or 2:

- Dashiel's work performance and duties while employed at PRERS;

- facts, circumstances and decision-making concerning Dashiel's job elimination and the closing of the Shelton office;

- correspondence written to or from Dashiel regarding her job elimination, the closing of the Shelton office and/or her application and withdrawal thereof for the ITC position in the Valhalla office;

- the distribution of Dashiel's work duties, responsibilities, accounts and files after her termination;

- names and job descriptions of ISCs and ITCs employed in the Shelton and Valhalla offices during the relevant time period, September 1, 1999 through October 31, 2002;

- names and job titles of the ISC's and/or ITC's who moved to Valhalla in or about October 2001;

- the decision to rescind the offer to relocate Dashiel and the other ISCs and ITCs to Prudential's Phoenix office; and

- PRERS's Relocation Manual, as well as policies, procedures, employee manuals and guidelines that applied to employees during the relevant time period, September 1, 1999 through October 31, 2002.

(Deno Decl., ¶ 7 & Ex. D.) These depositions will take place on March 2. In addition, Prudential will produce a witness or witnesses to testify as to verbal or written complaints, if any, against John O'Connell, Kathy Morris, Diana Tabankin and Jim Noto during the relevant time period, September 1, 1999 through October 31, 2002.

- 6 -

In an attempt to narrow the scope of the Notice, Attorney Melly and Attorney Mary Deno conferred by telephone on February 11 and 17, 2004. (Deno Decl., ¶ 8.)[2] Because counsel for the parties were unable to resolve their disputes, however, Prudential has no choice but to file this motion for the Court's consideration.

### III. ARGUMENT

#### A.   THE APPLICABLE RULE 26(c) STANDARD

Upon a showing of "good cause," a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c); Bridge C.A.T. Scan Assoc. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983) (holding that an issuance of a protective order is appropriate to prevent "injury, harassment or abuse of the court's processes"); Sony Corp. of Am. v. Soundview Corp. of Am., 3:00 CV 754 (JBA), 2001 WL 1772920, 2 (D. Conn. Oct. 23, 2001) (holding that "district courts are empowered to issue protective orders to temper the scope of discovery under Rule 26(c) of the Federal Rules of Civil Procedure"). In order to satisfy this burden, the moving party must "show good cause by demonstrating a particular need for protection." Bell, 2000 WL 33381017, *1; Laws v. Cleaver, No. 3:96 CV 92 (JGM), 1999 WL 33117449, *2 (D. Conn. Nov. 17, 1999); Berlin Batting Cages, Inc. v. Town of Berlin, No. 3:97CV01587(EBB), 1999 WL 464534, *1 (D. Conn. June 16, 1999). Prudential has carried its burden under Rule 26(c).

#### B.   THE COURT SHOULD ISSUE A PROTECTIVE ORDER LIMITING THE SCOPE OF DASHIEL'S RULE 30(b)(6) NOTICE

In her Rule 30(b)(6) Notice, Dashiel seeks corporate-wide discovery relating to employment decisions and departments, including business divisions and subsidiaries that

---

[2] During the February 17, 2004 telephone conversation, Attorney Melly agreed to limit paragraphs 8, 17, 18 and 19 to relevant time period suggested by Prudential — *i.e.*, September 1999 through October 31, 2002. (Deno Decl., ¶ 8.)

operate wholly independent of PRERS, at Prudential that have absolutely nothing to do with the closing of the Shelton office or the termination of her employment. (Deno Decl., Ex. B.) She also seeks discovery with respect to Prudential's financial condition, reports and statistical information regarding its overall workforce, the nature and purpose of acquisitions and mergers, reductions in force and layoffs, and organization charts of all Prudential locations where certain services are performed. (Id.) Moreover, in many instances, the Notice seeks testimony ranging from 1990 to the present — which is well outside the time period relevant to the allegations and claims in this case. The Court should not permit this open-ended fishing expedition.[3]

While "'[c]ounsel must be prepared to provide full and meaningful disclosure and discovery at the times required by the rules of procedure and the pretrial scheduling order,' . . . discovery is not without limitations. The Court has a duty to ensure that discovery requests are reasonable." Laws v. Cleaver, 3:96CV92 (JGM), 1999 WL 33177449, at *1 (D. Conn. Nov. 19, 1999). To that end, Rule 26(c) "gives the Court power to regulate harassing or burdensome depositions" and provides that the Court can "regulate the discovery process to avoid oppression, inconvenience, and burden to the corporation." Folwell v. Hernandez, 210 F.R.D. 169, 173 (M.D.N.C. 2002). Indeed, "liberal discovery does 'not justify an examination which can serve no useful purpose in furthering the [plaintiff's] case other than to afford an opportunity to vex and harass an opposing litigant.'" Sony Corp. of Am., 2001 WL 1772920, at *3 (citation omitted).

---

[3] Notably, Prudential was prepared to produce Rosemary Moreno, PRERS's former Director, Human Resources, who personally oversaw the closing of the Shelton office and has personal knowledge of the circumstances surrounding the termination of Dashiel's employment, for deposition on January 14, 2004. (Deno Decl., ¶ 3.) On January 8, 2004, however, Attorney Melly canceled Ms. Moreno's deposition and informed us that he would rather conduct a Rule 30(b)(6) deposition, (id., Ex. A), further demonstrating that he is engaging in an open-ended fishing expedition, which should not be permitted.

Here, the scope of the testimony sought in Dashiel's Notice is unreasonable, overly broad, unduly burdensome, irrelevant to the subject matter of this case and not likely to lead to the discovery of admissible evidence. Thus, the Court should exercise its broad discretion to restrict the scope of Dashiel's Notice. See Herbert v. Lando, 441 U.S. 153, 177 (1979) (holding that a trial court "should not neglect" its "power to restrict discovery" as provided by Rule 26(c) and "should not hesitate to exercise appropriate control over the discovery process"); Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (holding that it is within the trial court's discretion to determine whether a Rule 30(b)(6) notice creates an "undue burden").

### 1. Dashiel Is Only Entitled To Testimony Concerning Similarly-Situated Employees In Her Work Unit

In her Amended Complaint, Dashiel alleges that she was discriminated against because of her race when her job as an ISC was eliminated and she was not permitted to automatically transfer to another position at Prudential, thereby resulting in her termination. (Am. Compl., ¶¶ 31-76.) In order for Dashiel to prove her employment discrimination claim, she must "demonstrate that similarly situated employees were treated differently." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981). Consequently, "for evidence relating to other employees to be relevant, those employees must be situated similarly to [the plaintiff]." Mazella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1546 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987). As the court in Mazella stated:

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

642 F. Supp. at 1547; see also Gilman v. Runyon, 865 F. Supp. 188, 192 (S.D.N.Y. 1994).

Given that the resolution of an employment discrimination claim centers on a plaintiff's ability to prove that she was treated differently than similarly-situated employees, the courts have routinely limited discovery to similarly-situated employees within the plaintiff's "employing unit." For example, in Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990), the Eleventh Circuit denied the plaintiff's request for corporate-wide discovery of a reduction-in-force implemented throughout the various corporate employing units, and limited discovery to the plaintiff's "employing unit." In reaching its decision, the court stated, in words equally applicable to the present case:

> '*In the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit.*" Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (denial of division-wide discovery request which encompassed some 7,500 employees in thirty-two districts and 3 manufacturing plants); accord EEOC v. Packard Elec. Div. Gen. Motors Corp., 569 F.2d 315, 318-19 (5th Cir. 1978). While Champion's RIF was initiated at the national level, each plant was given considerable autonomy in drawing up its own RIF master plan. The decision to terminate Early and Noe in the RIF – as opposed to other employees – was made at a local level. *Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit.* See, e.g., Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989).

907 F.2d at 1084 (emphasis added); accord Scales v. J.C. Bradford & Co., 925 F.2d 901, 906-07 (6th Cir. 1991) (applying the Early court's approach and limiting a Title VII plaintiff's request for production to the department in which she worked), mot. denied, reh'g denied, 1991 U.S. App. LEXIS 5135 (6th Cir. Mar. 19, 1991), reh'g en banc denied, 1991 U.S. App. LEXIS 10434 (6th Cir. May 7, 1991); Sundarum v. Brookhaven Nat'l Lab. Associated Universities, Inc., 1996 WL 563829, at *1-2 (E.D.N.Y. March 11, 1996) (limiting plaintiff's discovery requests to information concerning plaintiff's "employing unit or work unit"); Cisko v. Commonwealth Edison Co., 67 Fair Empl. Prac. Cas. (BNA) 1630, 1631 (N.D. Ill. 1995) (same); In re Western

District Xerox Litig., 140 F.R.D. 264, 269-70 (W.D.N.Y. 1991) (limiting plaintiff's discovery to the "employing unit," and not permitting corporate-wide discovery); Allen v. Colgate-Palmolive Co., 539 F. Supp. 57, 70-71 (S.D.N.Y. 1981) (limiting discovery to "similarly situated" employees only).

Here, Prudential has agreed to provide witnesses to testify as to the circumstances surrounding Dashiel's termination and employees who were similarly-situated to her. The only employee who was similarly-situated to Dashiel was Joan Schell ("Schell"). Indeed, Schell was the only other employee who held the position of ISC in the Shelton office and who, like Dashiel, was terminated when that position was eliminated in October 2001. Ann Knotts, Ellen Shelovsky, Patricia Hardy, Sigal Reingold, Jan Kessler and Priscilla Dabbs (all of whom were identified in Prudential's responses to Dashiel's Interrogatories and their files produced to Dashiel), were ITCs in either Shelton or Valhalla. Had Dashiel not withdrawn her application for an ITC job in Valhalla, (see Am. Compl., ¶¶ 27-28), and been successful at obtaining that job, she would have reported to the same managers as these six individuals, and thus would have been similarly-situated to them.[4] Thus, at most, Dashiel is only entitled to discovery with respect to the ISC's and ITC's in the Shelton office, the decision to rescind the offer to her (and others) to relocate to the Phoenix facility, and the ITC position that she applied for in the Valhalla office. She is not, however, entitled to nationwide discovery of employment decisions throughout the numerous other business units and divisions of Prudential, as her Notice contemplates. See, e.g., Earley, 907 F.2d at 1084.

---

[4] As discussed above, Prudential has already provided Dashiel with a copy of her personnel file, copies of the personnel files of Joan Schell, Ann Knotts, Ellen Shelovsky, Patricia Hardy, Sigal Rengold, Jan Kessler and Priscilla Dabbs, as well as documents concerning the closing of the Shelton facility, the possible relocation of PRERS employees to Phoenix, opportunities Dashiel had to post for other jobs, Prudential's policies and manuals, and a list of information concerning the 501 individuals employed in the Shelton facility at the time it closed.

It would be oppressive, unduly burdensome and costly for Prudential, which has over 39,000 employees worldwide, to produce individuals for deposition to testify about departments or divisions that had absolutely no connection with, and no knowledge of, decisions relating to Dashiel's employment. (Affidavit of Sharon Wright, ¶¶ 3-4.) Nor would such testimony or testimony concerning Prudential's financial condition, overall workforce, acquisitions and mergers, and organization charts at *all* Prudential locations where certain services are performed lead to the discovery of evidence that Dashiel could use to establish the alleged discrimination surrounding the decision to terminate her employment. Under these circumstances, the Court should limit Dashiel's Rule 30(b)(6) Notice as to the subject matter set forth on page 6 above and as follows:

**Paragraphs 3 & 6 of the Notice** seek testimony concerning facts and circumstances of layoffs and reductions in force at Prudential as well as the reason and circumstances of the termination or separation of employment of all ISCs and ITCs and employees performing domestic or international relocation and visa and immigration duties at all locations of Prudential. Such testimony is overly broad, unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence. Nationwide discovery concerning layoffs and reductions in force that may have taken place at Prudential, other than those that occurred due to the closing of the Shelton facility, and concerning employees outside Dashiel's work-unit is simply beyond the scope of what is allowed under the liberal discovery rules. Accordingly, Dashiel should be limited to testimony concerning the closing of the Shelton facility, the decision to rescind the offer to relocate to Phoenix, and information concerning ISCs and ITCs in Shelton and the ITC position in Valhalla.[5]

**Paragraphs 4, 5, 22, 23, 24, 32, 34, 35, 38, 40 & 41 of the Notice** seek testimony concerning job titles, positions, job descriptions, addresses, salary and bonus, sales and work performance information of Prudential employees who are not similarly-situated to Dashiel and are outside of her work-unit. In addition, Dashiel was terminated because her position was eliminated and she failed to obtain another position in another office, and *not* because of her work performance. Accordingly, information regarding salary, bonus, sales and work performance of all PRERS employees, let alone all Prudential employees, is irrelevant and not likely to lead to the discovery

---

[5] Significantly, Dashiel testified at her deposition that her job duties did not include any visa or immigration functions, (Deno Decl., Ex. L), further demonstrating that she should not be entitled to testimony regarding every employee at Prudential, or even every employee within PRERS.

of admissible evidence. For these reasons, the Court should limit discovery to testimony relating to persons holding the ISC and ITC positions in Shelton and the ITC position in Valhalla.[6]

**Paragraphs 9, 10 and 21 of the Notice** seeks testimony concerning affirmative action reports, statistics, surveys or other information kept internally by Prudential or provided to a governmental or pubic agency. Again, these items ignore the fact that PRERS is only one of the numerous businesses of Prudential Financial, and that each business operates separately and provides completely different services and products. For this reason alone, corporate-wide discovery is wholly irrelevant. Thus, the Court should not require Prudential to produce a witness to testify as to this information, as it is not reasonably likely to lead to admissible evidence in this case. Moreover, in Prudential's objections and responses to Plaintiff's First Request for Documents, Prudential stated that it has not located any responsive information.

**Paragraphs 13 of the Notice** seeks testimony concerning the "names and addresses of customers and clients of Prudential whose accounts, files the plaintiff performed service or duties while employed at Prudential." Prudential objects to this request to the extent that is seeks testimony regarding confidential business information (*e.g.*, client addresses) and will not reasonably lead to admissible evidence in this case. In addition, Dashiel knows the PRERS clients with whom she worked and provided services; therefore, it defies logic as to why she needs discovery as to the names and addresses of those clients. Finally, as discussed above, Dashiel was not terminated due to her work performance or a reduction in clients; therefore, discovery as to this subject is irrelevant and not likely to lead to the discovery of admissible evidence.

**Paragraph 16 of the Notice** seeks testimony regarding the value of plaintiff's medical, dental & life insurance, retirement or 401k benefits at the time of her termination. As Prudential stated in its responses and objections to Plaintiff's First Request for Production of Documents, it will produce any information responsive to this request upon receipt of a written statement from plaintiff's counsel in accordance with the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. § 164.512(e)(1)(ii) ("HIPAA"), demonstrating that plaintiff has proper notice that her counsel has requested the disclosure of the documents sought in this request. To date, Attorney Melly has not provided Prudential with such written notice. Moreover, Prudential further stated in its discovery responses that the personnel information sought is equally accessible to Dashiel by calling "1-800-PRU-EASY." See Evans v. Allstate Ins. Co., 216 F.R.D. 515, 519 (D. Okla. 2003) (to the extent plaintiff has a right to pursue certain discovery, she may be required to seek it from alternate sources without deposing a corporate officer).

---

[6] Notwithstanding and without waiving its objections that it need not produce information concerning employees who are not similarly-situated to plaintiff, in response to Dashiel's interrogatories and document requests, Prudential produced a comprehensive list which set forth the following information for the 501 employees in the Shelton facility at the time it closed: each employees' name, position, date of hire, salary grade, whether he/she had been terminated, termination date (if applicable), gender, race and whether they transferred to another location upon the closing of the Shelton facility.

**Paragraphs 25, 26, 27, 28, 29, 30 & 31 of the Notice** seeks testimony concerning the financial performance of Prudential, balance sheets, annual reports and prospectus' for Prudential, stock offerings and purchase options, bond ratings, and acquisitions and mergers of Prudential. This testimony is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the information sought is accessible to the public, given that Prudential Financial is a publicly-held company. See Evans, 216 F.R.D. at 519. For these reasons, the Court should not require Prudential to produce an individual to testify as to the subject matter of these paragraphs.

**Paragraph 36 of the Notice** seeks organizational charts for all Prudential locations where destination, transportation, relocation, visa and immigration services are or were performed. Dashiel is only entitled to testimony concerning organizational charts, to the extent they exist, with respect to the Shelton and Valhalla facilities. On March 2, Prudential is producing witnesses who can testify to this information with respect to Shelton and Valhalla.

**Paragraph 37 of the Notice** seeks testimony concerning any verbal and written complaints lodged by employees against Prudential regarding the decision to relocate domestic and international relocation services to or from any location. As demonstrated above, Dashiel is only entitled to information concerning similar-situated employees in her work-unit. As Prudential stated in its responses and objections to Plaintiff's First Request for Production of Documents, Dashiel is the only individual employed in the Shelton facility during the relevant time period who filed a complaint of discrimination concerning the reorganization of PRERS. Thus, this paragraph of the Notice should be limited to Dashiel.

For all of the reasons stated above, the Court should issue a protective order narrowing the scope of Dashiel's Rule 30(b)(6) Notice.

### 2. The Testimony Dashiel Seeks In Her Rule 30(b)(6) Notice Should Be Limited To The Relevant Time Period

Paragraphs 3, 4, 6, 7, 9, 10, 14, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, and 41 of Dashiel's Rule 30(b)(6) Notice seek testimony far outside the scope of the relevant time period, dating as far back as 1990 (nine years before she began working at PRERS) and as far forward as the present (more than two years and four months after her employment ended). Because of the burden and expense to Prudential of producing witnesses with information responsive to such a lengthy span of time, (see Wright Aff., ¶¶ 4-6) – particularly when the information pre-dates or post-dates Dashiel's employment – there must be a reasonable time limit relating to Dashiel's Rule 30(b)(6) requests. Here, Prudential's time

- 14 -

Case 3:02-cv-01231-CFD   Document 47   Filed 03/02/2004   Page 15 of 16

period limitation – September 1, 1999 through October 31, 2002, a three year and one month period that extends from the start of her employment until one year beyond her separation date – is reasonable.  E.g., Sundarum, 1996 WL 563829, at *3 (limiting the time period of plaintiff's discovery to one year after the date of his termination); Finch v. Hercules, Inc., 62 Fair Empl. Prac. Cas. (BNA) 295, 299 (D. Del. 1993) (concluding that discovery of information two years prior to plaintiff's termination was reasonable); Zahorik v. Cornell Univ., 31 Fair Empl. Prac. Cas. (BNA) 1366, 1369-1370 (N.D.N.Y. 1983) (permitting discovery of information two years prior to filing of EEOC charge).  In fact, by providing Dashiel with two years and one month's worth of testimonial information prior to her date of termination, and one year's worth of testimonial information beyond her termination date, she will be given sufficient discovery from which she can attempt to prove her claim that she was terminated because of her race.  Finch, 62 Fair Empl. Prac. Cas. (BNA) at 299 ("providing two years of information prior to plaintiff's dismissal will allow plaintiff sufficient scope to discovery discriminatory practices").  Therefore, the Court should limit any testimony to the time period of September 1, 1999 through October 31, 2002.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should grant Prudential's Rule 26(c) motion for a protective order, thereby limiting the scope of Dashiel's Notice; grant to Prudential its costs, including attorneys' fees, in connection with this motion pursuant to Fed. R. Civ. P.

- 15 -

37(a)(4); and grant to Prudential such other and further relief as the Court may deem just and proper.

       Dated this 1st day of March 2004, at Newark, New Jersey.

                Respectfully submitted,

                PROSKAUER ROSE LLP

                By_____
                   Edward Cerasia II
                     Fed. Bar No. ct 13096
                  Mary Elizabeth Deno
                     Fed. Bar No. ct 24335
                One Newark Center, 18th Floor
                Newark, New Jersey 07102
                973.274.3200
                E-mail:  ecerasia@proskauer.com
                E-mail:  mdeno@proskauer.com

                Attorneys for Defendant
                 The Prudential Insurance Company of America

Local Counsel:

Jonathan B. Orleans
 Fed. Bar No. ct 05440
ZELDES, NEEDLE & COOPER
1000 Lafayette Boulevard
Bridgeport, Connecticut 06601
203.333.9441
E-mail:  jorleans@znclaw.com