UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------- x
                                      :

PAULA DASHIEL,                :

                                        :

                Plaintiff,          :      Case No.  3:02-CV-01231 (CFD/TPS)

                                        :

            -against-          :

                                        :

THE PRUDENTIAL INSURANCE    :      March 11, 2004
COMPANY OF AMERICA,         :

                                        :

                Defendant.     :

                                        :
---------------------------------------------------- x

**DEFENDANT THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION
TO  PLAINTIFF'S  MOTION TO COMPEL DISCOVERY**

## I. PRELIMINARY STATEMENT

Defendant The Prudential Insurance Company of America ("Prudential")[1] respectfully submits this memorandum of law in opposition to plaintiff Paula Dashiel's ("Dashiel's") motion to compel discovery, dated February 13, 2004.

Dashiel worked as an International Services Coordinator ("ISC") for Prudential Real Estate and Relocation Services ("PRERS"), a subsidiary of Prudential, in Shelton, Connecticut, from September 7, 1999 through October 31, 2001, when her employment, along with the employment of several hundred other employees, was terminated because PRERS closed the Shelton office due to a major reorganization.  As part of that reorganization, Dashiel's job was eliminated.  Although PRERS offered Dashiel the opportunity to apply for another job in its

---

[1]     Prudential is a wholly-owned subsidiary of Prudential Financial, Inc. ("Prudential Financial").  (Declaration of Sharon Wright ("Wright Decl."), ¶ 3.)

Valhalla, New York facility, she initially applied, but then voluntarily withdrew her application for a position there. Nevertheless, Dashiel claims that she was terminated from employment because of her race.

In her First and Second Request For Interrogatories and First Request For Production Of Documents, Dashiel seeks information concerning all of Prudential Financial's businesses, locations and employees, completely ignoring the fact that all of these businesses operate separately from PRERS, where Dashiel worked, and in completely different industries. In addition, Dashiel seeks information concerning several PRERS' locations other than that in which she worked, even though none of the employees in these locations performed similar job functions or reported to the same management. Of course, Prudential correctly objected to such unreasonably broad and burdensome discovery, but agreed to produce, and has produced, information and documents relating to similarly-situated employees in the Shelton, Connecticut and Valhalla, New York offices for the time period between September 1, 1999 and October 31, 2001.

Moreover, *even though* the only similarly-situated employee to whom Dashiel may compare herself in order to prove her discrimination claim is Joan Schell ("Schell"), who, like Dashiel, worked in the Shelton office, held the same position of ISC, and was terminated when the ISC position was eliminated in October 2001, at the time the Shelton office closed, Prudential provided information and documents related not only to Schell, but also to the six International Transportation Counselors ("ITCs") in the Shelton and Valhalla offices because Dashiel had posted for an ITC position in Valhalla prior to her termination.[2] Prudential also produced a comprehensive relating to the 501 individuals employed in the Shelton facility at the

---

[2]     As noted above, Dashiel voluntarily withdrew her application for the ITC position.

time it closed, which identified the employee's name, position, date of hire, salary grade, whether he/she has been terminated, termination date (if applicable), gender, race and whether he/she transferred to another location upon the closing of the Shelton facility. Finally, Prudential produced information and documents concerning Dashiel, including the posting opportunity available to her and the termination of her employment; the consolidation of PRERS' offices and the relocation of its operations to Phoenix, Arizona; and Prudential's human resource policies.

Despite the fact that Prudential has produced all of this information and documents, Dashiel contends that Prudential's discovery responses are insufficient. Specifically, in her motion to compel discovery, without providing any reasonable or legal basis, Dashiel seeks to convince this Court that she is entitled to the discovery of nationwide, if not worldwide, information and documents relating to *all* employees of Prudential Financial and PRERS. Contrary to Dashiel's assertions, however, she is not entitled to discovery concerning non-similarly-situated employees in the other PRERS offices or other business lines or organizations of Prudential Financial, given that the decision to eliminate her position (as well as any alleged discriminatory decision to require her to apply for another job if she wanted to stay employed with Prudential after her termination date) was made by management within PRERS' Shelton and Valhalla offices. The only similarly-situated employees to whom Dashiel can compare herself in order to prove her race discrimination claim are those employees in PRERS who held the same job title and reported to the same decision-maker. Consequently, information and documents relating to other PRERS offices and Prudential Financial divisions and businesses have nothing to do with the employment decision complained of in this case, are not reasonably calculated to lead to the discovery of admissible evidence with respect to the decision-maker's

alleged discriminatory intent, and thus are clearly irrelevant to Dashiel's discriminatory discharge and common law claims in this case.

In addition, Prudential has objected to Dashiel's discovery requests to the extent that she seeks information and documents before September 1999 and after October 2002.[3] Thus, Prudential has produced information and documents covering the time period of September 1, 1999 through October 31, 2002. Because, as discussed below, numerous courts have held that this 3 year and 2 month time period is reasonable — permitting discovery for a period of more than 2 years prior to Dashiel's termination *and* 1 year after her termination — the Court should adopt this time period limitation.

Accordingly, the Court should deny Dashiel's motion to compel in its entirety.[4]

---

[3]     Although in its General Objections, Prudential generally limited the relevant time period to September 1999 through October 2001, it has looked for and produced documents through October 31, 2002.

[4]     Although Dashiel argues that the "vast majority of the items and documents requested by the plaintiff were not produced and all of the interrogatories were objected to" (*i.e.*, on the grounds that they are vague, overly broad, unduly burdensome, and seeks information/documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence; (Pl.'s Br. at 4), Prudential notes that it did *not* withhold any information or documents on the basis of these specific objections alone. Rather, Prudential has not produced information and/or documents primarily on the following three grounds: (1) information and/or documents relating to Prudential business units or divisions other than PRERS or in locations other than Shelton and Valhalla would be extremely burdensome to locate and collect and, more importantly, are irrelevant because they do not relate to "similarly-situated" employees; (2) the production of information and/or documents outside of the September 1, 1999 to October 31, 2001 time period will be burdensome and not likely to lead to the discovery of admissible evidence; and (3) information or documents compiled by Prudential and its counsel, since the filing of Dashiel's administrative charge with Connecticut Commission on Human Rights ("CHRO") are protected by the attorney-client privilege, the attorney work-product doctrine, or as trial preparation materials. Thus, subject to these objections, Prudential produced any responsive information and/or documents that it was able to locate. If documents were not found or do not exist, then Prudential so stated in its responses. While Dashiel may be dissatisfied that there is no information or document responsive to certain of her requests, nothing in Fed. R. Civ. P. 34 requires a defendant to create information or documents. In light of

## II. __BACKGROUND FACTS__

Prudential Financial is a large, multi-business organization (which includes Prudential and PRERS) and offers a variety of products and services to individual and institutional customers worldwide, including life insurance, property and casualty insurance, mutual funds, annuities, pension and retirement related services and administration, asset management, banking and trust services, real estate brokerage franchises, and relocation services.  (Wright Decl., ¶ 3.) Prudential employs over 39,000 employees worldwide in over 2,000 offices globally  (Id.) PRERS provides, among other services, a variety of relocation services to clients, employs approximately 1,500 employees worldwide and maintains six offices in the United States, eight international offices and 28 on-site centers where employees are co-located with clients and use those on-site locations as their home base.  (Id.)

On September 7, 1999, PRERS hired Dashiel as an ISC in Shelton, Connecticut.  (Am. Compl., ¶ 10.)  She remained in that position until October 31, 2001, when her job was eliminated and her employment terminated (along with several hundred other employees) as a result of the closing of the Shelton office.  (Id., ¶ 29.)

In or around November 1999, PRERS announced a major reorganization that ultimately resulted in the closing of 4 offices, including the Shelton office, and the consolidation and relocation of PRERS' operations in Phoenix, Arizona.  (Id., ¶ 12; Wright Decl., ¶ 5.)  As a result, by letter dated January 1, 2001, PRERS offered Dashiel an opportunity to transfer to Phoenix, with the same job title and salary.  (Am. Compl., ¶ 14; Deno Decl., Ex. N.)  Due to a change in

---

the above, Prudential will only respond to Dashiel's arguments with respect to the objections noted above.

"business strategy," however, PRERS rescinded its offer to transfer Dashiel (and others) to Phoenix, by letter dated January 11, 2001. (Id. ¶ 15; Deno Decl, Ex. O.)

In or about March 2001, PRERS notified Dashiel that it was going to eliminate the ISC position in Shelton (which it did in October 2001) and would create new ITC positions in Valhalla, New York. (Id., ¶¶ 18-19.) Management advised Dashiel that she, like all of the other employees who held the defunct ISC position, could post for the new ITC jobs. (Id., ¶ 25) On April 16, 2001, Dashiel thanked PRERS management for "asking [her] to reapply for the (ISC) ITC position," but stated that she "decided [she was] not interested in making a lateral move at [that] time." (Deno Decl., Ex. P.)

By letter dated August 31, 2001, PRERS formally notified Dashiel that, due to the previously announced reorganization, her job was being eliminated and that her employment would be terminated effective October 31, 2001, unless she obtained another position within the company. (Deno Decl., Ex. Q.) In that letter, PRERS informed Dashiel of her eligibility for a severance package and to post for other vacant positions. (Id.)

On September 26, 2001, Dashiel inquired as to whether the ITC position in the Valhalla facility was still available; the position was still available and an interview was scheduled. (Deno Decl., Ex. R.) On October 2, 2001, Dashiel applied and interviewed for an ITC position in Valhalla. (Am. Compl., ¶ 27.) The next day, however, Dashiel voluntarily "withdrew her application" for that job and, as a result, PRERS did not offer her that job. (Id., ¶¶ 27-28.) Consequently, PRERS terminated Dashiel's employment, effective October 31, 2001. (Deno Decl., Ex. Q; see Am. Compl., ¶ 29.)

After receiving notice of her upcoming termination, Dashiel filed a charge of race discrimination with the CHRO. (Deno Decl., Ex. S.) On December 28, 2001, after completing

6

its initial merit assessment review, the CHRO issued a decision dismissing Dashiel's discrimination claim. (Id., Ex. U.) Specifically, the CHRO found that "[t]here is no evidence to indicate that you were subjected to unequal terms and conditions of employment, denied a transfer to another position or terminated due to your race or color." (Id.)

Dashiel filed this lawsuit against Prudential on July 17, 2002. Prudential then moved to dismiss the Complaint. In response to that motion, Dashiel sought leave to amend the Complaint, which was granted with Prudential's consent. Thereafter, Dashiel served her Amended Complaint, which alleges race discrimination under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, in connection with her termination and asserts various common law claims, including promissory estoppel, breach of implied contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, and misrepresentation. On April 22, 2003, Prudential served its Answer and Affirmative Defenses to the Amended Complaint.

In April and May 2003, Dashiel served Prudential with her First Request for Interrogatories (April 1, 2003), her Second Request for Interrogatories (May 2, 2003) and her First Request for Production of Documents (May 21, 2003). Dashiel's attorney, Michael Melly, consented to Prudential's request for extensions of time to respond to Dashiel's discovery requests, because Prudential was having difficulty locating and gathering responsive information and documents in light of the fact that the Shelton facility closed in 2001, and that Dashiel's working unit no longer existed. (Deno Decl., ¶ 3; see Wright Decl., ¶¶ 6-7.) Moreover, because of the confidential nature of the information and documents Prudential intended to produce, on June 19, 2003, Prudential's counsel sent Attorney Melly a draft Stipulation and Order of Confidentiality Governing The Treatment of Confidential Material ("Confidentiality

Stipulation") for his review.  (Deno Decl., ¶ 4.)  Attorney Melly, however, waited more than two months to sign and return the Confidentiality Stipulation; Prudential's counsel did not receive it until August 28, 2003.  (Id.)[5]  Nevertheless, Prudential produced its written responses to Dashiel's First Request For Interrogatories on June 23, 2003, and its written responses to Dashiel's First Request For Production of Documents and Second Request For Interrogatories on July 29, 2003.  (Id., ¶ 5 & Exs.  B, C & D.)  In its General Objections, Prudential stated that it would only produce information and documents relating to similarly-situated employees in the Shelton, Connecticut and Valhalla, New York offices between September 1, 1999 and October 31, 2001.  (Deno Decl., Exs. B, C & D.)

On September 8, 2003, Prudential's counsel learned that Attorney Melly no longer worked for The Employment Law Group, and that Eugene Axelrod would handle this case. (Deno Decl., ¶ 6.)  On September 22, 2003, Attorney Deno spoke with Attorney Axelrod, who said that Dashiel had retained Attorney Melly as her counsel and that Attorney Axelrod would withdraw as counsel of record, which he eventually did.  (Id., ¶ 7.)

On September 23, 2003, Attorney Deno finally received an e-mail from Attorney Melly advising that he had been retained as Dashiel's sole attorney and asking Attorney Deno to forward all correspondence to his attention.  (Id., ¶ 8 & Ex. E.)  Because she had not received any contact information for Attorney Melly, other than his e-mail address, Attorney Deno sent an e-mail to Attorney Melly on September 25, 2003, requesting his new contact information.  (Id.) That same day, Attorney Melly e-mailed Attorney Deno his contact information and asked when

---

[5]     Prudential filed the executed Confidentiality Stipulation with the Court on September 24, 2003.  By Order dated October 8, 2003, the Court approved that Stipulation, with some modifications.  (Docket Sheet Entry No. 28.)

Prudential was going to serve the documents that had been withheld pending his execution of the Confidentiality Stipulation.  (Id., ¶ 9 & Ex. F.)  On October 1, 2003, Attorney Deno sent Prudential's documents to Attorney Melly by overnight mail, including Dashiel's personnel file, Prudential's Employee Handbook, the PRERS Relocation Policy and a comprehensive list of Shelton employees and their personnel information at the time of the Shelton closing.  (Id.)  In addition, on October 27, 2003, Prudential served Attorney Melly with its supplemental responses and objections to Dashiel's Second Request For Interrogatories.  (Id., ¶ 15 & Ex. I.)

Then, on October 10, 2003, Attorney Melly called Attorney Deno and, for the first time since he received Prudential's written responses which were served on June 23, 2003 and July 29, 2003, raised several discovery disputes and challenged Prudential's discovery responses as deficient.  (Id., ¶ 10.)  When Attorney Deno asked Attorney Melly to put his discovery disputes in writing so that Prudential could adequately respond and try to resolve the issues, Attorney Melly stated that doing so "would be a waste of time" and that "from now on it would be about motion practice."  (Id.)  Attorney Melly took that stance despite the fact that he admittedly had not yet read Prudential's written responses to Dashiel's discovery requests.  (Id.)  Attorney Deno told him that he should do so and then contact her or Edward Cerasia II, Esq. to confer about the discovery disputes — as required under the Federal Rules — prior to filing a motion to compel. (Id. & Ex. G.)

On October 13, 2003, Attorneys Melly and Deno conferred about the alleged deficiencies in Prudential's discovery responses.  (Id., ¶ 11.)  Attorney Deno informed Attorney Melly that Prudential believed that its objections were justified and responses were sufficient, but that she would work with Prudential to obtain certain additional responsive documents and information, to the extent that they exist.  (Id.)  To that end, on November 3 and 17, 2003, Prudential

produced to Attorney Melly additional documents, including additional personnel information concerning Dashiel, the ISC and ITC job descriptions, documents concerning the relocation of certain PRERS services to Phoenix, Prudential's polices governing management and evaluation of employee performance, the personnel file of Schell (the other ISC in Shelton), and copies of Prudential's filings with the CHRO.  (See id., ¶ 16, Ex. J.)

The original discovery cut-off date in this case was set for November 14, 2003.  (Deno Decl., ¶ 14.)  However, the day before Dashiel's deposition scheduled for October 15, 2003, Attorney Melly filed a motion for a protective order to prevent Prudential from taking her deposition, which the Court denied on December 3, 2003.[6]  (Id., ¶ 13.)  While that motion was pending, however, Attorney Melly filed a motion for a 60-day enlargement of time to conduct discovery, up to and including, January 14, 2004.  (Id., ¶ 14.)  The Court granted that motion on November 20, 2003, and Dashiel's deposition was taken on January 14, 2003.  (Id.)  On January 14, 2004, Attorney Melly informed Prudential that, on January 13, 2004, he filed a second motion for a 60-day enlargement of time to conduct discovery, which Prudential opposed on January 21, 2004.  (Id., ¶ 17.)  On February 2, 2004, the Court issued an Order granting a final extension of discovery, up to and including, March 14, 2004.  (Id.)

On January 19, 2004, Attorney Melly sent counsel for Prudential a letter outlining alleged deficiencies in Prudential's discovery responses, alleging that Prudential did not respond to interrogatories, that it produced "voluminous packages of documents . . . leaving plaintiff to speculate as to which request each page of portion [of the produced documents] thereof responds," and stating that our interrogatory responses were not verified and that Prudential must

---

[6]    The procedural history underlying some of the earlier discovery disputes in this case are set forth in more detail in Defendant The Prudential Insurance Company Of America' Memorandum Of Law In Opposition To Plaintiff's Motion For A Protective Order, filed on November 4, 2003, which Prudential incorporates by reference herein.

verify its written responses.  (<u>Id</u>., ¶ 18 & Ex. K.)  On January 28, 2004, in an effort to avoid

motion practice, Prudential served Attorney Melly with supplemental responses and objections to

Dashiel's First Request For Production Of Documents, which set forth the corresponding Bates

stamp numbers to each request.[7]  (<u>Id</u>., ¶ 19 & Ex. L.)  Moreover, on February 13, 2004 — before

receiving Dashiel's motion to compel — Prudential served Attorney Melly with a supplemental

document production, including the personnel files of the six individuals who held the position

of ITC in the Valhalla office as of late -2001.  (<u>Id</u>., ¶ 20 & Ex. M.)

Overall, in response to Dashiel's discovery requests, Prudential has provided her with the

following information and documents:

- Dashiel's personnel file;

- the personnel file of Schell (the only other employee who held the job position of ISC in the Shelton office and who, like Dashiel, was terminated when that position was eliminated in October 2001);

- the personnel files of Ann Knotts, Ellen Shedlovsky, Patricia Hardy, Sigal Reingold, Jan Kessler and Priscilla Dabbs (ITCs in either Shelton or Valhalla who would have reported to the same supervisor as Dashiel if she had assumed an ITC job in Valhalla);

- documents concerning the possible relocation of the PRERS group to Phoenix, Arizona;

- documents concerning the closing of the Shelton facility;

- documents regarding Dashiel's termination and opportunities she had to post for other jobs, including, for example, correspondence concerning her decision to withdraw her application for a job in Valhalla;

- the PRERS Relocation Policy;

---

[7]     With respect to Dashiel's request that Prudential "verify" its discovery responses, Prudential has no obligation under the Federal Rules to verify document requests.  <u>See</u> Fed. R. Civ. P. 34.  Moreover, Prudential had Sharon Wright ("Wright"), Vice President of Human Resources for PRERS, verify Prudential's responses to Dashiel's First and Second Request For Interrogatories.  (Deno Decl., Exs. B, C & I.)

- Prudential's Employee Handbook, and all of Prudential's Human Resource Policies; and

- a comprehensive list setting forth the following information for the *501 employees* in the Shelton facility at the time it closed: each employee's name, position, date of hire, salary grade, whether he/she has been terminated, termination date (if applicable), gender, race and whether they transferred to another location upon the closing of the Shelton facility.

Notwithstanding, Dashiel filed this motion to compel on February 13, 2004, which Prudential received on February 17, 2004.

### III.  <u>ARGUMENT</u>

### A.     <u>THE APPLICABLE STANDARD UNDER RULE 26</u>

Prudential's objections to Dashiel's discovery requests were properly asserted and it has fulfilled its obligations under Fed. R. Civ. P. 33 and 34.  Contrary to well-established law, Dashiel argues that she is entitled to nationwide, if not worldwide, discovery concerning non-similarly-situated employees and information that has absolutely nothing to do with the decision to close the Shelton office, the decision to eliminate her job, or her claim of discriminatory discharge.  Simply put, she is wrong.

While "'[c]ounsel must be prepared to provide full and meaningful disclosure and discovery at the times required by the rules of procedure and the pretrial scheduling order,' . . . discovery is not without limitations.  The Court has a duty to ensure that discovery requests are *reasonable*."  Laws v. Cleaver, 3:96 CV 92 (JGM), 1999 WL 33177449, at *1 (D. Conn. Nov. 19, 1999) (emphasis added).  Indeed, "liberal discovery does 'not justify an examination which can serve no useful purpose in furthering the [plaintiff's] case other than to afford an opportunity to vex and harass an opposing litigant.'"  Sony Corp. of Am. v. Soundview Corp. of Am., 3:00 CV 754 (JBA), 2001 WL 1772920, at *3 (D. Conn. Oct. 23, 2001) (citation omitted).

Despite the fact that "the standard of relevance in the context of discovery is broader than in the context of admissibility," Rule 26 "should not be misapplied so as to allow fishing

expeditions in discovery." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993);

Coppola v. Arrow Financial Servs. LLC, 3:02 CV 577 (PCD), 2002 WL 32173704, at *1 (D.

Conn. Oct. 29, 2002).  A court should not issue an order compelling discovery without a

"showing by the movant that the material sought is either directly relevant or likely to produce

relevant material." Croom v. Western Connecticut State Univ., 218 F.R.D. 15, 16 (D. Conn.

April 3, 2002) (denying plaintiff's motion to compel discovery).  Additionally, a court should not

grant a motion to compel discovery if "the burden or expense of the proposed discovery

outweighs its likely benefit." Rubin v. Hirschfeld, 3:00 CV 1657 (PCD), 2002 WL 32175201, at

*1 (D. Conn. Feb. 12, 2002); Coppola, 2002 WL 32173704, at *1; Marchello v. Chase

Manhattan Auto Finance Corp., 219 F.R.D. 217, 218 (D. Conn. Jan. 10, 2004).  Applying these

standards here, it is clear that the Court should deny Dashiel's motion to compel, as

demonstrated below.

**B.    DASHIEL IS ONLY ENTITLED TO DISCOVERY CONCERNING SIMILARLY-SITUATED EMPLOYEES IN HER WORK UNIT**

In her Amended Complaint, Dashiel alleges that she was discriminated against because of

her race when her job as an ISC was eliminated and she was not permitted to automatically

transfer to another position at Prudential, thereby resulting in her termination.  (Am. Compl.,

¶¶ 31-76.)  In order for Dashiel to prove her discriminatory discharge claim, she must

"demonstrate that similarly situated employees were treated differently." Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981).  Consequently,

"for evidence relating to other employees to be relevant, those employees must be situated

similarly to [the plaintiff]." Mazella v. RCA Global Communications, Inc., 642 F. Supp. 1531,

1546 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987).  As the court in Mazella stated:

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

642 F. Supp. at 1547; see also Gilman v. Runyon, 865 F. Supp. 188, 192 (S.D.N.Y. 1994).

Given that the resolution of an employment discrimination claim centers on a plaintiff's ability to prove that she was treated differently than similarly-situated employees, the courts have routinely limited discovery to similarly-situated employees within the plaintiff's "employing unit." For example, in Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990), the Eleventh Circuit denied the plaintiff's request for corporate-wide discovery of a reduction-in-force implemented throughout the various corporate employing units, and limited discovery to the plaintiff's "employing unit." In reaching its decision, the court stated, in words equally applicable to the present case:

> '*In the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit.*" Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (denial of division-wide discovery request which encompassed some 7,500 employees in thirty-two districts and 3 manufacturing plants); accord EEOC v. Packard Elec. Div. Gen. Motors Corp., 569 F.2d 315, 318-19 (5th Cir. 1978). While Champion's RIF was initiated at the national level, each plant was given considerable autonomy in drawing up its own RIF master plan. The decision to terminate Early and Noe in the RIF – as opposed to other employees – was made at a local level. *Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit.* See, e.g., Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989).

907 F.2d at 1084 (emphasis added); accord Scales v. J.C. Bradford & Co., 925 F.2d 901, 906-07 (6th Cir. 1991) (applying the Early court's approach and limiting a Title VII plaintiff's request for production to the department in which she worked), mot. denied, reh'g denied, 1991 U.S. App. LEXIS 5135 (6th Cir. March 19, 1991), reh'g en banc denied, 1991 U.S. App. LEXIS

10434 (6th Cir. May 7, 1991); Sundarum v. Brookhaven Nat'l Lab., Associated Univs., Inc.,
1996 WL 563829, at *1-2 (E.D.N.Y. Mar, 11, 1996) (limiting plaintiff's discovery requests to
information concerning plaintiff's "employing unit or work unit"); Cisko v. Commonwealth
Edison Co., 67 Fair Empl. Prac. Cas. (BNA) 1630, 1631 (N.D. Ill. 1995) (same); In re Western
District Xerox Litig., 140 F.R.D. 264, 269-70 (W.D.N.Y. 1991) (limiting plaintiff's discovery to
the "employing unit," and not permitting corporate-wide discovery); Allen v. Colgate-Palmolive
Co., 539 F. Supp. 57, 70-71 (S.D.N.Y. 1981) (limiting discovery to "similarly situated"
employees only).

Here, Prudential has provided Dashiel with substantial information and documents
concerning the circumstances surrounding her termination, the termination or status of all other
employees in Shelton, and employees in her working unit who were similarly-situated to her.  It
simply has no obligation to produce anything more.

The only employee who was similarly-situated to Dashiel was Schell.  Indeed, Schell was
the only other employee who, like Dashiel, held the position of ISC in the Shelton office,
performed the same duties, and was terminated when the ISC position was eliminated in October
2001.  Ann Knotts, Ellen Shedlovsky, Patricia Hardy, Sigal Reingold, Jan Kessler and Priscilla
Dabbs (all of whom were identified in Prudential's responses to Dashiel's Interrogatories and
their employment files produced to Dashiel), were ITCs in either Shelton or Valhalla.  Had
Dashiel not withdrawn her application for an ITC job in Valhalla, (see Am. Compl., ¶¶ 27-28),
and been successful at obtaining that job, she would have reported to the same management as
these six individuals, and thus would have been similarly-situated to them.[8]  Thus, at most,

_____

[8]    As discussed above, Prudential has already provided Dashiel with a copy of her personnel
file, copies of the personnel files of Schell, Ann Knotts, Ellen Shedlovsky, Patricia Hardy, Sigal
Reingold, Jan Kessler and Priscilla Dabbs, as well as documents concerning the closing of the

Dashiel is only entitled to discovery with respect to the ISCs and ITCs in the Shelton and Valhalla offices, the decision to rescind the offer to her (and others) to relocate to the Phoenix facility, and the ITC position that she applied for in the Valhalla office. She is not, however, entitled to nationwide or global discovery of employment decisions throughout the numerous other business units and subsidiaries of Prudential Financial or Prudential, or of other PRERS offices. See, e.g., Earley, 907 F.2d at 1084 (limiting discovery to plaintiff's "work unit").

It would be oppressive, unduly burdensome and costly for Prudential, which has over 39,000 employees worldwide and over 2,000 offices globally, to respond to interrogatories and production requests that are vague, overly broad and seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. (Wright Decl., ¶¶ 4-7.) Under these circumstances, Prudential maintains that its objections are wholly justified and should be sustained by the Court.

With respect to Dashiel's specific requests in her motion to compel, Prudential responds as follows:

**Interrogatory No. 1:** This Interrogatory seeks information concerning any individual who assisted in preparing answers to the Interrogatories. (Pl.'s Br. at 8.) Dashiel argues that she is entitled to this information so that she can decide who to depose or call as witnesses at trial. (Id.)[9]

In addition to its General Objections and objections that this Interrogatory is unduly burdensome and seeks information that is neither relevant to the subject matter of this litigation

---

Shelton facility, the possible relocation of PRERS employees to Phoenix, opportunities Dashiel had to post for other jobs, Prudential's policies and manuals, and a list of information concerning the 501 individuals employed in the Shelton facility at the time it closed.

[9]     Dashiel appears to argue that none of Prudential's supplemental objections and responses have been verified. (Pl.'s Br. at 5.) Contrary to this assertion, *all* of Prudential's responses and supplemental responses to Dashiel's Interrogatories have been verified by Wright. (Deno Decl., Exs. B, C & I.)

nor reasonably calculated to lead to the discovery of admissible evidence, Prudential also

objected to this Interrogatory because it seeks information that is protected from disclosure under

the attorney-client privilege and attorney work-product doctrine.  Indeed, any information

obtained by Prudential and its counsel in response to Dashiel's Interrogatories were conducted

by Prudential's counsel or by others enlisted to do so by legal counsel in preparation of this

litigation.  Consequently, this information is protected from disclosure.  Burger v. Litton Indus.,

Inc., 1994 WL 669505, *2-3 (S.D.N.Y. 1994) (holding that documents created at direction of

counsel in anticipation of trial are protected by attorney-client privilege and work-product

doctrine).

      In any event, Dashiel's argument that without such information she will not know who to

depose or call as witnesses, (Pl.'s Br. at 8), is disingenuous at best.  Dashiel is well aware of the

persons who have personal knowledge of her allegations, as she identified several individuals in

her deposition.  Moreover, Prudential listed 6 individuals in its Rule 26(a)(1) Initial Disclosures

as persons likely to have information that Prudential may use to support its claims and defenses.

(Deno Decl., Ex. V.)  Finally, Prudential's responses and supplemental responses to Dashiel's

Interrogatories were all verified by Wright.

**Interrogatory No. 5 and Document Request No. 5:**  These discovery requests seek the names,
age, race, nationality, job titles, positions, job descriptions, salary, of Prudential employees who
assumed all or part of the tasks and responsibilities that Dashiel had performed at the time of her
termination.  (Pl.'s Br. at 8-9, 24.)  Dashiel argues that she is entitled to this information because
it "goes to the heart of plaintiff's claims."  (Id. at 9.)

      In response to these discovery requests, Prudential objected on the grounds that they were

vague, overly broad, unduly burdensome, seeks information that is neither relevant to the subject

matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence,

and to the extent they assume facts not otherwise admitted or established.  In addition, Prudential

stated that Dashiel's job was eliminated, (Deno Decl., Ex. Q), and referred Dashiel to the PRERS

Relocation Policy.

In any event, Prudential refers to its position statement submitted to the CHRO, bearing

Bates stamp numbers D 0006637 through D 000709, which specifically states on page D 000641,

that the ISC position was eliminated and that the responsibilities were transferred to the

International Associate Managers ("IAMs") in Phoenix, Arizona. (Deno Decl., Ex. T.) The

IAMs are not similarly-situated to Dashiel and are outside of her employing work-unit, as she did

not work there and, like all other ISCs in Shelton, was not permitted to transfer to that facility.

Accordingly, information regarding the age, race, nationality and salary of the IAMs is irrelevant

and not likely to lead to the discovery of admissible evidence.

**Interrogatory No. 6:**  This Interrogatory seeks information concerning Dashiel's retirement,
pension, and 401k benefits.  (Pl.'s Br. at 9.)  Dashiel argues that she is entitled to this
information because it "goes to damages incurred by" her.  (Id.)

Prudential stated in its discovery responses that the personnel information sought is

equally accessible to Dashiel by calling "1-800-PRU-EASY."  Significantly, Attorney Melly

failed to mention, either in his January 19, 2004 letter or in any conversations with counsel for

Prudential, that he was unable to retrieve information responsive to this Interrogatory by using

the 1-800 number.  (See Deno Decl., Ex. K.)  Prudential learned for the first time in Dashiel's

motion to compel that she was unable to obtain information concerning Dashiel's retirement,

pension and 401k benefits using the 1-800 number.  Notwithstanding, Prudential states that it has

produced all personnel information it has located for Dashiel to date.

**Interrogatory No. 8 and Document Request No. 13:**  These discovery requests seek
information and documents concerning any investigation or inquiry conducted by Prudential, its
agent, servant, employee, contractor or otherwise, regarding plaintiff's claims and Prudential's
defenses in this matter.  (Pl.'s Br. at 10, 25.)  Dashiel argues that she is entitled to this
information because "[i]t in incomprehensible that no other person(s) in the company"  other
than attorneys "investigated or inquired" about her claims.  (Id. at 10.)

Prudential objected to these requests on grounds, *inter alia*, that these requests seek information and/or communications protected from disclosure under the attorney-client privilege, the attorney work product doctrine, or as trial preparation materials. (Deno Decl., Exs. B, D & L.) Any and all investigations in response to Dashiel's claims and Prudential's defenses were conducted by legal counsel or individuals acting upon the direction of legal counsel for the sole purpose of responding to Dashiel's CHRO complaint and/or her Amended Complaint. (See, e.g., Deno Decl., Ex. T.) To that end, such information and documentation is privileged and protected from disclosure. E.g., Kayata v. Foote, Cone & Belding Worldwide, L.L.P., 2000 U.S. Dist. LEXIS 5314, at *4-7 (S.D.N.Y. Apr. 26, 2000) (holding that the work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation' free from unnecessary intrusion by his adversaries" and "extends to those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation" or in response to an administrative charge of discrimination) (citation omitted); Fed. R. Civ. P. 26(b).

**Interrogatory No. 9 and Document Request Nos. 23, 24, 25 & 26**: These discovery requests seek information and documents concerning the name, age, date of birth, race, nationality, job title, salary, department, unit, facility of all employees performing similar duties as Dashiel in the PRERS division who were transferred to another position, promoted, laid off, fired, terminated or retired with the reasons and dates thereof for 1999 through present. (Pl.s' Br. at 11, 26-28.) Dashiel argues that she is entitled to information about all employees from all Prudential locations who may perform similar duties as her and that Prudential arbitrarily and incorrectly concluded as to which individuals are similarly situated. (Id. at 11-12.) Moreover, she claims that Prudential must have information responsive to this request pursuant to legal requirements under the Warren Act. (Id. at 27-28.)

Prudential primarily objected to these requests because they seek discovery concerning individuals outside of Dashiel's work unit. As demonstrated above, Dashiel is not entitled to such information or documents. E.g., Sundarum, 1996 WL 563829, at *1-2 (limiting plaintiff's

discovery requests to information concerning plaintiff's "employing unit or work unit"). In her brief, Dashiel makes a self-serving assumption that because there may be other individuals (*e.g.*, ITCs) in various facilities worldwide who perform duties *similar* in nature to her — but not the same as her — that all of them are similarly situated. The ITCs, however, performed different functions than Dashiel and accordingly, she is not entitled to corporate-wide information about every ITC employed by PRERS. The only person who held the same job position and performed the same job functions as Dashiel was Schell, and Prudential has provided information about Schell, including her entire personnel file in response to these requests. Prudential also provided Dashiel with information and documents for the six employees who held the ITC position for which she had applied, but then withdrew her application. Simply put, Prudential should not be required to disclose any additional information because, to the extent such information exists, it is irrelevant to the subject matter of this case and is not likely to lead to the discovery of admissible evidence.

**Interrogatory Nos. 10 & 11:** These Interrogatories seeks discovery concerning reports, surveys, statistical analysis or other documents that contain the age, race, nationality, date of birth of employees transferred, promoted, demoted, laid off, fired, terminated or retired from 1995 through the present, as well as the name and location of each person identified, the department or business unit within Prudential or outside contractor, business or entity that maintains and possesses such documents and/or reports. (Pl.'s Br. at 12-13.) Dashiel argues that he needs this information to pursue further discovery. (Id. at 13.)

These Interrogatories ignore the fact that PRERS is only one of the numerous businesses of Prudential Financial, that each business operates separately, and that PRERS provides completely different services and products. (Wright Decl., ¶ 3.) Nor has Dashiel shown that there is a common decision-maker with respect to her termination and decisions at the other Prudential business units in question. For these reasons alone, corporate-wide discovery is wholly irrelevant. Thus, the Court should not require Prudential to produce this information.

Moreover, notwithstanding these objections, Prudential produced a comprehensive list of the 501

employees in the Shelton office at the time of its closing in October 2001, which contains each

employee's name, position, date of hire, salary grade, whether he/she has been terminated,

termination date (if applicable), gender, race and whether they transferred to another location

upon the closing of the Shelton facility.

**Interrogatory No. 12 and Document Request Nos. 7, 11 & 29:**  These discovery requests seek
information concerning all employee handbooks, manuals, publications and modifications
thereto published by Prudential for employees from 1999 to present, as well as any documents
describing and any and all jobs, positions, titles, salary, salary grades and bonus information for
*all* positions at Prudential.  (Pl.'s Br. at 13, 24, 29.)  Dashiel argues that Prudential did not fully
answer these requests and, moreover, that it was improper to answer Interrogatory No. 12 by
referring to documents produced.  (<u>Id</u>. at 14.)  In addition, Dashiel contends that she is entitled to
information about all positions at Prudential to determine whether she was qualified for any of
them.  (<u>Id</u>. at 24-25, 29-30.)

In response to Interrogatory No. 12, Prudential identified its Employee Handbook:

Human Resources reference guide to the partnership between the company and the employee, its

published HR Policies and the PRERS Group Move Relocation Policy, and produced those

documents after Attorney Melly executed the Confidentiality Stipulation.  Prudential

supplemented its responses to these requests on November 17, 2003, by producing policies

governing the management and evaluation of employee performance.[10]  Fed. R. Civ. P. 33(d)

specifically allows a party to answer interrogatories by referring to documents: "Where the

answer to an interrogatory may be derived or ascertained from the business records of the party

upon whom the interrogatory has been served or form an examination, audit or inspection of

such business records . . . it is a sufficient answer to such interrogatory to specify the records

from which the answer may be derived or ascertained and to afford to the party serving the

interrogatory reasonably opportunity to examine, audit or inspect such records and to make

---

[10]     The documents produced were also responsive to Document Request Nos. 7 and 11.

copies, compilations, abstracts or summaries." Fed. R. Civ. P. 33(d). Second, despite Dashiel's argument that Prudential's response is incomplete, it stated that it has not located any additional manuals, handbooks, policies, memos or other documents responsive to these requests — which ends any dispute.

Finally, with respect to the job position and wage/bonus information sought in Document Request Nos. 11 and 29, because Prudential Financial is a large, multi-business organization with various divisions employing over 39,000 employees, it would be unduly burdensome, harassing and costly for Prudential to produce documents concerning every single job, job grade and salary range, and bonus information, as these requests contemplate. (Wright Decl., ¶¶ 3-4, 7.) In any event, Prudential produced job descriptions for the ISC and ITC position, as well as information and documents concerning Dashiel's salary and bonuses, the salary range for ITCs, and salary and personnel information concerning the six ITCs in the Valhalla office in late 2001. (Deno Decl., ¶¶ 9, 16 & 20.)

**Interrogatory Nos. 14 & 15 and Document Request Nos. 16 & 35:** These discovery requests seek information and documents regarding complaints, dispositions, settlement agreements, awards and orders, notes and correspondence concerning complaints made by current or former employees regarding discrimination based on race, nationality, salary, bonus or benefit, which were made internally, or to the CHRO, EEOC or other state agency. (Pl.'s Br. at 14-16, 26.) Dashiel argues she is entitled to this information because it may be used to establish pretext and/or may be admissible as "prior bad acts" under Federal Rule of Evidence 404(a). (Id. at 15.)

These discovery requests are overly broad, unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence. First, Dashiel seeks worldwide discovery of complaints from any and all PRERS locations, and departments at Prudential, and does not limit her requests to her work unit. These requests clearly transcend any boundaries of reasonableness since they fail to specify any time period and seek information regarding employees other than those who are similarly-situated to Dashiel. Moreover, in response to Request No. 16 of

Dashiel's First Request For Production Of Documents, Prudential properly limited its responses

to the Shelton facility where Dashiel worked, noting that she was the only employee in the

Shelton office during the relevant time period who filed a complaint of race discrimination with

any court or government agency.

**Interrogatory No. 17 and Document Request No. 14:**  These discovery requests seek
information and documents regarding statements obtained by Prudential regarding incidents
alleged in the complaint or Prudential's answer, claims and defenses.  (Pl.'s Br. at 16, 25.)
Dashiel argues that she is entitled to such statements because they may be allowed in examining
witnesses.  (Id. at 16-17.)

As Dashiel concedes in her brief, (Pl.'s Br. at 16), Prudential has already stated that no

"statements" or "transcriptions" have been obtained.  (Deno Decl., Exs. B, D & L.)  Accordingly,

the dispute should end here.

In any event, Prudential primarily objected to these discovery requests to the extent they

seek information and/or communications protected from disclosure under the attorney-client

privilege, the attorney work-product doctrine, or as trial preparation materials.  E.g., Kayata,

2000 U.S. Dist. LEXIS 5314, at *4-7 (holding that the work-product doctrine "preserves a zone

of privacy" for legal counsel and those acting at their direction "to perform investigative or

analytical tasks" in preparation for litigation).  More specifically, any documents that have been

prepared in response to the incidents alleged in Dashiel's CHRO charge or Amended Complaint

are privileged, work-product, and trial preparation materials; thus, Dashiel is not entitled to any

documents prepared in connection with *and* after the commencement of litigation and she cites

no authority showing otherwise.  Id.; Lugosch v. Congel, 218 F.R.D. 41, 47-48 (N.D.N.Y. 2003)

(holding that statements made by employees at any level of a corporation to an attorney or the

attorney's agent, as well as the attorney's notes, memoranda and files pertaining to those

statements are protected by the attorney-client privilege and, if made in anticipation of litigation, are protected by the work product doctrine).

**Interrogatory Nos. 20 & 21:**  These Interrogatories seek discovery concerning the dates when PRERS moved its offices from the Shelton location and personnel information for each individuals who relocated from Shelton to another facility.  (Pl.'s Br. at 18-19.)  Dashiel concedes that Prudential produced a list of the 501 employees at the Shelton office at the time of its closing, but argues that it is inadequate.  (Id. at 18-19.)

        Notwithstanding its stated objections to these Interrogatories, Prudential produced a comprehensive list of the 501 employees at the Shelton office at the time it closed, including each employee's name, position, date of hire, salary grade, whether he/she had been terminated, termination date (if applicable), gender, race and whether he/she transferred to another location upon the closing of the Shelton facility.  Moreover, Prudential supplemented its responses to Dashiel's Request for Production of Documents with additional documentation (memos, e-mails, question and answer information sheets, etc.) relating to the closing of the Shelton office and relocation of PRERS to Phoenix, Arizona.  It also produced personnel files of similarly-situated employees.  Prudential stated that it has been unable to locate additional responsive documents.  Thus, it has fully responded to these Interrogatories.

**Interrogatory Nos. 22, 23, 24 & 26:**  These Interrogatories seek discovery concerning *all* Prudential employees including their respective name, address, race, age, date of birth, nationality, job title, job descriptions, location, department, and salary and bonus.  Dashiel claims that she is entitled to this information because it is directly related to her claim of discrimination and may be used as circumstantial evidence of how Prudential treated her.  (Pl.s' Br. at 20-24.)  Dashiel states that she is willing to narrow this request to all employees located at any Prudential facility who perform duties similar to those performed by PRERS and/or by her. (Id. at 24.)

        As demonstrated above, Dashiel is not entitled to worldwide discovery concerning employees who are not similarly-situated to her and are outside of her work-unit.  Sundarum, 1996 WL 563829, at *1-2.  Moreover, Dashiel's purported limitation on this Interrogatory is meaningless because the PRERS division alone has over 1,500 employees charged with various

job functions in the handling of relocating clients, including, among other things, the inspection and sale of a home, equity advances, and a variety of group move consulting services, (Wright Decl., ¶ 3, Ex. A.) — job functions that are wholly different from those performed by Dashiel. Thus, the Interrogatory — even limited — seeks overly broad information concerning employees and departments that are not similarly-situated to Dashiel and have nothing to do with her department, the decision-maker, or her allegations of discrimination.   For these reasons, the information sought is completely irrelevant and not reasonably likely to lead to the discovery of admissible evidence.  Thus, the Court should limit discovery relating to persons holding the ISC and ITC positions in Shelton and the ITC position in Valhalla.

**Document Request Nos. 35 & 36:**  These requests seek the production of memos, correspondence, resumes, job applications and documents concerning transfers and new hires into the ISC and ITC position from 2001 to present and of all ISCs and ITCs from 1998 to present.  (Pl.'s Br. at 30-31.)  Dashiel claims Prudential has not provided a "scintilla of that requested" in these requests and contends that she is entitled to such information to prove her claim of discrimination.  (Id. at 30-31.)

As demonstrated above, Dashiel is not entitled to personnel information of every ISC and ITC employed by PRERS throughout the country because these employees were not similarly-situated to her.  Sundarum, 1996 WL 563829, at *1-2.  Notwithstanding this objection, and contrary to Dashiel's assertion that Prudential has not produced a "scintilla of that requested," Prudential has provided her with the personnel files of the six ITC's in the Valhalla office as of the end of 2001 (Jan Kessler, Patricia Hardy, Sigal Reingold, Priscilla Dabbs, Ellen Shedlovsky, Annie Knotts) and Schell (the only other ISC in the Shelton office).  (Deno Decl., Exs. J & M.)

## C.    DASHIEL'S DISCOVERY REQUESTS SHOULD BE LIMITED TO THE RELEVANT TIME PERIOD

Interrogatory Nos. 5, 10, 11, 12, 13, 14, 15, 21, 22, 23, 24, 26, 27, and 28 of Plaintiff's First Request For Interrogatories and Production Request Nos. 4, 5, 7, 8, 11, 14, 16, 17, 18, 19,

21, 23, 24, 25, 26, 28, 29, 30, 33, 34, 35 and 36 of Plaintiff's First Request For Production Of

Documents seek discovery far outside the scope of the relevant time period, dating as far back as

1994 (five years before Dashiel began working at PRERS) and as far forward as the present

(more than two years and four months after her employment ended).  Because of the burden and

expense to Prudential of producing information responsive to such a lengthy span of time, (see

Wright Decl., ¶¶ 5-7.) – particularly when the information pre-dates or post-dates Dashiel's

employment – there must be a reasonable time limit relating to her discovery requests.  Here,

Prudential's time period limitation – September 1, 1999 through October 31, 2002, a three year

and two month period that extends from the start of her employment until one year beyond her

separation date – is reasonable.  E.g., Sundarum, 1996 WL 563829, at *3 (limiting the time

period of plaintiff's discovery to one year after the date of his termination); Finch v. Hercules,

Inc., 62 Fair Empl. Prac. Cas. (BNA) 295, 299 (D. Del. 1993) (concluding that discovery of

information two years prior to plaintiff's termination was reasonable); Zahorik v. Cornell Univ.,

31 Fair Empl. Prac. Cas. (BNA) 1366, 1369-70 (N.D.N.Y. 1983) (permitting discovery of

information two years prior to filing of EEOC charge).  In fact, by providing Dashiel with two

years and two month's worth of information and/or documents prior to her date of termination,

and one year's worth of information and/or documents beyond her termination date, she has been

given sufficient discovery from which she can attempt to prove her claim that she was terminated

because of her race, or any of her common law claims.  Finch, 62 Fair Empl. Prac. Cas. (BNA) at

299 ("providing two years of information prior to plaintiff's dismissal will allow plaintiff

sufficient scope to discovery discriminatory practices").  Therefore, the Court should limit any

discovery to the time period of September 1, 1999 through October 31, 2002.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should deny Dashiel's motion to compel discovery; grant to Prudential its costs, including attorneys' fees, in connection with this motion pursuant to Fed. R. Civ. P. 37(a)(4); and grant to Prudential such other and further relief as the Court may deem just and proper.

Dated this 11th day of March 2004, at Newark, New Jersey.

Respectfully submitted,

PROSKAUER ROSE LLP

By_____
    Edward Cerasia II
     Fed. Bar No. ct 13096
    Mary Elizabeth Deno
     Fed. Bar No. ct 24335
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
E-mail:  ecerasia@proskauer.com
E-mail:  mdeno@proskauer.com


Attorneys for Defendant
 The Prudential Insurance Company of America

Local Counsel:

Jonathan B. Orleans
  Fed. Bar No. ct 05440
ZELDES, NEEDLE & COOPER
1000 Lafayette Boulevard
Bridgeport, Connecticut 06601
203.333.9441
E-mail:  jorleans@znclaw.com