UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                :

PAULA DASHIEL,                 :

           Plaintiff,        :     Case No.  3:02-CV-01231 (CFD/TPS)

                                :

     -against-           :

                                :

THE PRUDENTIAL INSURANCE    :     June 11, 2004
COMPANY OF AMERICA,         :

                                :

          Defendant.     :

                                :
------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PROSKAUER ROSE LLP
Edward Cerasia II
Mary Elizabeth Deno
One Newark Center, 18th Floor
Newark, New Jersey 07101
973.274.3200

-and-

ZELDES, NEEDLE & COOPER, P.C.
Jonathan B. Orleans
1000 Lafayette Boulevard
Bridgeport, Connecticut 06601
203.333.9441

Attorneys for Defendant
The Prudential Insurance Company of America

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  UNDISPUTED FACTS ............................................................................... 4

III. ARGUMENT .............................................................................................. 7

    A.   THE APPLICABLE SUMMARY JUDGMENT STANDARD ................................. 7

    B.   THE COURT ONLY HAS JURISDICTION OVER DASHIEL'S
        RACE DISCRIMINATION CLAIM IN CONNECTION WITH HER
        TERMINATION AND FAILURE TO SELECT HER FOR THE
        ITC JOB IN THE VALHALLA FACILITY ............................................................ 8

    C.   THE COURT SHOULD DISMISS COUNT ONE OF THE
        AMENDED COMPLAINT BECAUSE DASHIEL HAS
        NO EVIDENCE OF RACE DISCRIMINATION ...................................................... 10

        1.   Dashiel cannot Establish a Prima Facie Case of
            Race Discrimination In Connection With Her
            Failure to Obtain An ITC Job And Her Termination .......................................... 11

            a.   Dashiel had no pending application for another
                vacant position at the time of her termination ............................................. 12

            b.   Dashiel was not terminated under circumstances
                giving rise to an inference of race discrimination ....................................... 13

        2.   The Record Indisputably Demonstrates That PRERS Had
            Legitimate, Non-Discriminatory Reasons For Not Selecting Dashiel
            For The ITC Job In Valhalla And For Terminating Her Employment ............. 17

        3.   Dashiel Has Absolutely No Evidence of Pretext Or That
            The Real Reason She Was Not Selected For The ITC Job
            In Valhalla Or For Her Termination Was Her Race ............................................ 18

    D.   DASHIEL'S BREACH OF IMPLIED CONTRACT CLAIM IN COUNT TWO
        FAILS BECAUSE HER EMPLOYMENT WAS TERMINABLE AT WILL ......... 19

**Page**

E.  THE COURT SHOULD DISMISS DASHIEL'S PROMISSORY ESTOPPEL
CLAIM IN COUNT THREE BECAUSE SHE CANNOT ESTABLISH
THAT PRERS MADE A CLEAR AND DEFINITE PROMISE UPON
WHICH SHE RELIED, THAT SHE INCURRED AN INJURY OR THAT
SHE EXERCISED DUE DILIGENCE TO LEARN THE TRUTH OF THE
PURPORTED REPRESENTATIONS .......................................................................23

    1.  Dashiel Cannot Establish That PRERS
Made a "Clear and Definite Promise" .................................................23

    2.  Dashiel Cannot Establish That She Relied
On Any Promise To Her Detriment ......................................................24

    3.  Dashiel Cannot Establish That She
Exercised Due Diligence To Know The
Truth Of The Purported Representations ............................................25

F.  THE COURT SHOULD DISMISS DASHIEL'S CLAIM FOR BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE
SHE HAD ADEQUATE STATUTORY REMEDIES TO ADDRESS HER
ALLEGATIONS OF RACE DISCRIMINATION....................................................26

G.  THE COURT SHOULD DISMISS DASHIEL'S IIED CLAIM BECAUSE
THE ALLEGED CONDUCT IS NOT EXTREME OR OUTRAGEOUS.................27

H.  DASHIEL CANNOT PROVE HER NEGLIGENT
MISREPRESENTATION CLAIM..........................................................................29

I.  DASHIEL PURPORTED PUNITIVE DAMAGES CLAIM
IN COUNT SEVEN MUST BE DISMISSED .........................................................31

IV.  CONCLUSION....................................................................................................................32

# TABLE OF AUTHORITIES

## CASES

**Page**

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2001) ............................................................................................. 19

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ........................................................................................................ 8

Appleton v. Board of Educ. of Stoningham,
    254 Conn. 205 (2000) ............................................................................................... 27, 28

Atkins v. Bridgeport Hydraulic Co.,
    5 Conn. App. 643 (1985) ............................................................................................... 26

Balletti v. Sun-Sentinel Co.,
    909 F. Supp. 1539 (S.D. Fla. 1995) .............................................................................. 16

Bator v. Yale-New Haven Hosp.,
    73 Conn. App. 576 (2003) ............................................................................................. 29

Bawa v. Brookhaven Nat'l Lab.,
    968 F. Supp. 865 (E.D.N.Y. 1997),
    aff'd, 201 F.2d 430 (2d Cir. 1999) (table) ................................................................ 9, 16

Bennett v. Beiersdorf, Inc.,
    889 F. Supp. 46 (D. Conn. 1995) .............................................................................. 26, 27

Booze v. Shawmut Bank,
    62 F. Supp. 2d 593 (D. Conn. 1999) ............................................................................. 14

Brown v. Coach Stores, Inc.,
    163 F.3d 706 (2d Cir. 1998) .......................................................................................... 12

Brown v. Ellis,
    40 Conn. Super. 165 (Conn. Super. 1984) .................................................................... 28

Burbank v. Office of the Attorney General of the State of Connecticut,
    240 F. Supp. 2d 167 (D. Conn. 2003) ...................................................................... 15, 16

Burnham v. Karl & Gelb, P.C.,
    50 Conn. App. 385 (1998) ............................................................................................. 20

Carbone v. Atlantic Richfield Co.,
    204 Conn. 460 (1987) .................................................................................................... 20

Carlson v. Principal Financial Group,
    320 F.3d 301 (2d Cir. 2003) .......................................................................................... 12

iii

**Page**

Carmonella v. Walsh,
    75 Conn. App. 319 (2003) ...............................................................................28

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................7, 8

Choate v. Transport Logistics Corp.,
    234 F. Supp. 2d 125 (D. Conn. 2002)...........................................................11, 18

Chotkowski v. State of Connecticut,
    240 Conn. 246 (1997) .............................................................................24, 25, 26

Cianfrano v. Babbitt,
    851 F. Supp. 41 (N.D.N.Y. 1994).....................................................................19

Citino v. Redevelopment Agency,
    51 Conn. App. 262 (1998) ...............................................................................30

Coelho v. Posi-Seal Int'l, Inc.,
    208 Conn. 106 (1988) ...............................................................................20, 22

Cooperman v. Solil Management, Inc.,
    2000 WL 16929 (S.D.N.Y. Jan. 11, 2000) .........................................................15

Criales v. American Airlines, Inc.,
    1998 WL 661473 (E.D.N.Y. July 20, 1998),
    aff'd, 216 F.3d 1071 (2d Cir. 2000) (table) .........................................................9

D'Ulisse-Cupo v. Board of Directors of Notre Dame High Sch.,
    202 Conn. 206 (1987) ...............................................................................23, 30

Dale v. Chicago Tribune Co.,
    797 F.2d 458 (7th Cir. 1986) ...........................................................................19

DeLaurentis v. City of New Haven, CT,
    200 Conn. 225 (1991) .....................................................................................29

DiCola v. SwissRe Holding (N. Am.), Inc.,
    996 F.2d 30 (2d Cir. 1993)...............................................................................10

Diggs v. Town of Manchester, CT,
    303 F. Supp. 2d 163 (D. Conn. 2004)................................................................15

Duprey v. The Prudential Ins. Co. of Am.,
    910 F. Supp. 879 (N.D.N.Y. 1996)...............................................................14, 16

Economu v. Borg-Warner Co.,
    829 F.2d 311 (2d Cir. 1987)...........................................................................24-25

**Page**

Fischer v. Vassar College,
    114 F.3d 1332 (2d Cir. 1997),
    cert. denied, 522 U.S. 1075,
    reh'g denied, 523 U.S. 1041 (1998) ...........................................................12, 14

Foster-Bey v. Potter,
    296 F. Supp. 2d 195 (D. Conn. 2003) .................................................................9

Giametti v. Inspections, Inc.,
    76 Conn. App. 352 (2003) ................................................................................30

Gilyard v. S.C. Dep't. of Youth Servs.,
    667 F. Supp. 266 (D.S.C. 1985) ......................................................................18

Gonzalez v. Connecticut Dep't. of Transportation,
    151 F. Supp. 2d 174 (D. Conn. 2001) ........................................................12, 17

Grady v. Affiliated Cent., Inc.,
    130 F.3d 553 (2d Cir. 1997),
    cert. denied, 525 U.S. 936 (1998) ............................................................... 13-14

Graham v. TexasGulf, Inc.,
    662 F. Supp. 1451 (D. Conn. 1987),
    aff'd, 842 F.2d 1287 (2d Cir. 1988) .................................................................18

Griffin v. Ambika Corp.,
    103 F. Supp. 2d 297 (S.D.N.Y. 2000)...............................................................11

Halbrook v. Reichhold Chems., Inc.,
    766 F. Supp. 1290 (S.D.N.Y. 1991),
    aff'd, 956 F.2d 1159 (2d Cir. 1992) (table).......................................................11

Hustler Magazine v. Falwell,
    485 U.S. 46 (1988)...........................................................................................29

James v. New York Racing Ass'n,
    233 F.3d 149 (2d Cir. 2000)..................................................................... 10-11, 18

Johnson v. Chesebrough-Pond's USA Co.,
    918 F. Supp. 543 (D. Conn.),
    aff'd, 104 F.3d 355 (2d Cir. 1996) ...................................................................26

Kintner v. Nidec-Torin Corp.,
    662 F. Supp. 112 (D. Conn. 1987)....................................................................28

Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999)...............................................31

**Page**

Luxenberg v. The Guardian Life Ins. Co. of Am.,
    2004 U.S. Dist. LEXIS 3121 (S.D.N.Y. Mar. 2, 2004) ......................................19

Martin v. Citibank, N.A.,
    762 F.2d 212 (2d Cir. 1985)...............................................................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...........................................................................................8

McCulley v. So. Conn. Newspapers,
    98 F. Supp. 2d 216 (D. Conn. 2000) ................................................................14

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)........................................................................................9, 10

Miller v. IT&T Corp.,
    755 F.2d 20 (2d Cir.),
    cert. denied, 474 U.S. 851,
    reh'g, denied, 474 U.S. 1015 (1985) ..................................................................9

Moodie v. Federal Reserve Bank of N.Y.,
    862 F. Supp. 59 (S.D.N.Y. 1994),
    aff'd, 58 F.3d 879 (2d Cir. 1995) .....................................................................11

Norton v. Sam's Club,
    145 F.3d 114 (2d Cir.),
    cert. denied, 525 U.S. 1001 (1998) ..................................................................19

Pace v. Bristol Hosp.,
    1994 Conn. Super. LEXIS 2974 (Conn. Super. Nov. 4, 1994)..........................20

Parcinski v. The Outlet Co.,
    673 F.2d 34 (2d Cir. 1982)........................................................................... 17-18

Passonno v. State Univ. of N.Y. at Albany,
    889 F. Supp. 602 (N.D.N.Y. 1995)...................................................................13

Patino v. Rucker,
    1996 WL 137481 (S.D.N.Y. Mar. 27, 1996),
    aff'd, 122 F.3d 1057 (2d Cir. 1997) (table) .....................................................14

Perodeau v. City of Hartford, CT,
    259 Conn. 727 (2002) .......................................................................................29

Petyan v. Ellis,
    200 Conn. 243 (1986) ...........................................................................27, 28, 29

**Page**

Pisana v. Merrill Lynch & Co.,
    1995 U.S. Dist. LEXIS 10296 (S.D.N.Y. July 20, 1995) ...................................................14

Plummer v. Western Int'l Hotels Co.,
    656 F.2d 502 (9th Cir. 1981) ..........................................................................................16

Powell v. Syracuse Univ.,
    580 F.2d 1150 (2d Cir.),
    cert. denied, 439 U.S. 984 (1978) .................................................................................19

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995).................................................................................................12

Reed v. Signode Corp.,
    652 F. Supp. 129 (D. Conn. 1986)....................................................................................2

Reeves v. Sanderson Plumbling, Inc.,
    530 U.S. 133 (2000)................................................................................................ 10-11

Reich v. New York Hosp.,
    513 F. Supp. 854 (S.D.N.Y. 1981) ...................................................................................9

Rose v. James River Paper Co.,
    2 F. Supp. 2d 245 (D. Conn. 1998)....................................................................20, 26, 27

Rose v. Panolam Indus. Int'l Inc.,
    301 F. Supp. 2d 239 (D. Conn. 2004)..........................................................20, 22, 27, 28

Scaria v. Rubin,
    117 F.3d 652 (2d Cir. 1997)......................................................................................10, 19

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2001).......................................................................................10, 18

Suttell v. Manufacturers Hanover Trust Co.,
    793 F. Supp. 70 (S.D.N.Y. 1992) ...................................................................................16

Texas Dep't of Community Affairs v. Burdine,
    450 U.S. 248 (1981)...............................................................................................10, 11

Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,
    234 Conn. 1 (1995) .........................................................................................................20

Tutko v. James River Paper Co.,
    1998 U.S. Dist. LEXIS 20664 (D. Conn. Nov. 12, 1998),
    aff'd, 199 F.3d 1323 (2d Cir. 1999) ..............................................................23, 24, 25, 26

**Page**

Viola v. Philips Med. Sys. of N. Am.,
  42 F.3d 712 (2d Cir. 1994)........................................................................................11

Wade v. New York Tel. Co.,
  500 F. Supp. 1170 (S.D.N.Y. 1980).......................................................................16, 17

Wallace v. SMC Pneumatics, Inc.,
  103 F.3d 1394 (7th Cir. 1997) ..................................................................................14

Watt v. New York Botanical Garden,
  2000 WL 193626 (S.D.N.Y. Feb. 16, 2000)...............................................................15

Western World Ins. Co. v. Stack Oil, Inc.,
  922 F.2d 118 (2d Cir. 1990)........................................................................................8

White v. Martin,
  23 F. Supp. 2d 203 (D. Conn. 1998),
  aff'd, 198 F.3d 235 (2d. Cir. 1999) ......................................................................27, 28

Williams v. Brooklyn Union Gas Co.,
  819 F. Supp. 214 (E.D.N.Y. 1993) ............................................................................13

Zimmerman v. Associates First Capital Corp.,
  251 F.3d 376 (2d Cir. 2000)......................................................................................31

## RULES & STATUTES

Fed. R. Civ. P. 1.......................................................................................................7

Fed. R. Civ. P. 56..................................................................................................1, 7, 8

42 U.S.C. § 2000e-5(e) ...............................................................................................10

## I. <u>PRELIMINARY STATEMENT</u>

Defendant The Prudential Insurance Company of America ("Prudential") respectfully submits this memorandum of law in support of its Fed. R. Civ. P. 56 motion for summary judgment dismissing the entire Amended Complaint. As demonstrated below, summary judgment in favor of Prudential is warranted with respect to all of the claims in this case.

Plaintiff Paula Dashiel ("Dashiel"), who is African-American, was employed by Prudential Real Estate and Relocation Services ("PRERS") in Shelton, Connecticut, as an International Services Coordinator ("ISC") from September 7, 1999 through October 31, 2001. In or about November 1999, PRERS announced that it planned to consolidate its operations in Phoenix, Arizona, and ultimately close the Shelton facility. In early 2001, Dashiel learned that her employment (along with over 400 other employees) would end in October 2001, if she did not find another job with PRERS or another Prudential business. In April 2001, PRERS invited Dashiel to apply for a job as an International Transportation Counselor ("ITC") in its Valhalla, New York facility. At that time, however, Dashiel told PRERS that she was not interested in applying for that job.

On August 31, 2001, PRERS formally notified Dashiel that her job was being eliminated and that her employment would end on October 31, 2001, *unless* she obtained another position with PRERS or Prudential. On October 2, 2001, Dashiel applied for an open ITC job in Valhalla. Dashiel interviewed for that job with Deb Kershaw ("Kershaw"), who, like Dashiel, is African-American, and Kim Fields ("Fields"), a human resources professional in Valhalla. Kershaw, the Manager of International Transportation, supervised all of the ITCs in Valhalla and was the sole decision-maker with respect to who would be selected for an ITC job in Valhalla.

Shortly after her interview, Dashiel sent an e-mail to Kershaw and Fields, stating that she was withdrawing her application for the ITC job. Consequently, Kershaw did not select Dashiel for the ITC job in Valhalla. Dashiel did not apply for, and thus did not obtain, any other position with PRERS or another Prudential business. Consequently, her employment was terminated on October 31, 2001.

In her Amended Complaint, Dashiel asserts the following claims: Count One – race discrimination in connection with her failure to obtain the ITC job in Valhalla and the termination of her employment, in violation of Title VII of the Civil Rights Act of 1964; Count Two – breach of an implied contract; Count Three – promissory estoppel; Count Four – breach of an implied covenant of good faith and fair dealing; Count Five – intentional infliction of emotional distress ("IIED"); and Count Six – negligent misrepresentation.[1]

As demonstrated below, the Court should dismiss Dashiel's Title VII claim that she was denied an ITC job and discharged because of her race – the only claim over which the Court has jurisdiction – because Dashiel cannot establish a *prima facie* case of race discrimination for each of the following reasons:

- she voluntarily withdrew her application for an ITC job and had no other pending application for an open job at the time of her termination; and

- she cannot raise an inference of race discrimination, given that she admits that Kershaw, the sole decision-maker with respect to the ITC job, did not discriminate against her; Kershaw also is African-American; the person hired for the ITC job is African-American; four out of the six ITCs in Valhalla were African-American; Dashiel has no proof that she was treated differently than similarly-situated, non-African-American employees; Dashiel was hired by PRERS in the first instance, obviously knowing that she is African-American; and the Connecticut Commission on Human Rights ("CHRO") dismissed

---

[1]    Count Seven does not assert any recognized cause of action; it merely alleges that Prudential engaged in some unidentified "wanton and willful" conduct in violation of Dashiel's "rights." (Am. Compl., ¶ 76.) This suggests it is a demand for punitive damages, which, as demonstrated below, are not recoverable in this case in any event.

Dashiel's complaint, finding that she did not have any evidence of race discrimination, which is compelling evidence in this case.

Even if Dashiel could establish a *prima facie* case of race discrimination, she has absolutely no competent evidence that PRERS' legitimate, non-discriminatory reasons for not selecting her for the ITC job and terminating her employment were pretextual *or* that the real reason for these decisions was her race. Therefore, she has given the Court no choice but to dismiss Count One.

The Court should dismiss Dashiel's state law claims in Counts Two through Six on each of the following grounds:

- Dashiel, who was an "at will" employee, cannot prove that an implied contract existed between her and PRERS. She admits that no one at PRERS ever promised or guaranteed her employment for a specific period of time, and the acceptance letter and other documents she received from PRERS make plain that she was an "at-will" employee at all times.

- Dashiel cannot prove her promissory estoppel claim because she cannot point to any "clear and definite promise" by PRERS to continue her employment or change her at-will relationship and, in any event, she did not justifiably rely to her detriment upon any purported promise or exercise the diligence required to ascertain the truth of any such promise.

- Dashiel cannot maintain her breach an implied covenant of good faith and fair dealing claim because her statutory remedy for alleged race discrimination under Title VII precludes her implied covenant claim as a matter of law.

- Dashiel's allegations fall far short of the stringent "extreme and outrageous" conduct standard required to prove an IIED claim under Connecticut law; nor can she show that PRERS intended to cause her "severe" emotional distress or that she has any proof of such distress.

- Dashiel cannot prove her negligent misrepresentation claim for the same reason that her breach of contract and promissory estoppel claims fail, namely: she was an "at-will" employee at all times and PRERS never made any promise or representations (let alone *mis*representations) that her employment would continue for any specified period of time or beyond October 31, 2001.

3

For each of these reasons, the Court should grant Prudential's motion for summary judgment and dismiss the Amended Complaint in its entirety.

## II. <u>UNDISPUTED FACTS</u>

The undisputed material facts in this case are set forth in Defendant's Local Rule 56(a)(1) Statement of Material Facts ("Def.'s 56(a)(1)"). For the Court's convenience, Prudential incorporates herein those undisputed facts and provides the following summary.

On September 7, 1999, PRERS hired Dashiel as an ISC for its international division in Shelton, Connecticut. (Def.'s 56(a)(1), ¶ 1.) As an ISC in the PRERS international division, Dashiel primarily "worked with [PRERS'] corporate clients to help their employees who were relocating overseas." (<u>Id</u>, ¶ 6.) Her job function, as well as Joan Schell's ("Schell's") – another ISC in the Shelton facility – primarily involved "destination services." (<u>Id</u>.)

Dashiel was an at-will employee: she or PRERS could "terminate the employment relationship at any time with or without cause, without prior notice." (<u>Id</u>., ¶ 3.) Significantly, between September 1999 and the end of her employment on October 31, 2001, no one at PRERS ever told Dashiel that she was guaranteed employment with PRERS for any specific period of time. (<u>Id</u>., ¶ 5.) Nor did she ever receive anything in writing from PRERS guaranteeing her employment for a specific period of time. (<u>Id</u>.)

In or around November 1999, PRERS announced a major reorganization, reporting that senior management had decided to consolidate and relocate the majority of PRERS' operations, including certain functions of its international operations, to a new facility in Phoenix, Arizona. (<u>Id</u>., ¶ 7.) Specifically, management planned to transfer the destination services and visa and immigration components of PRERS' international operations to Phoenix, Arizona, and to

4

consolidate the transportation services component of the international operations in PRERS'

Valhalla, New York facility.  (Id.)

By letter dated January 1, 2001, PRERS offered Dashiel, and other employees whose jobs

were transferring, an opportunity to relocate to Phoenix, with the same job title.  (Id., ¶ 8.)  The

January 1, 2001 letter expressly stated that PRERS' offer to transfer Dashiel did not alter her "at-

will" employment relationship.  (Id., ¶ 9.)  By letter dated January 11, 2001, however, PRERS

notified Dashiel that, due to a change in "business strategy," it was rescinding its offer to transfer

Dashiel and other employees who performed similar international transportation functions to

Phoenix.  (Id., ¶ 11.)  While the January 11, 2001 letter stated that PRERS needed to consider

other locations for possible transfer, it does not contain any representation or promise that

Dashiel would remain employed with PRERS for any specific period of time or that she would

be transferred to a facility in New York or elsewhere.  (Id., ¶¶ 12-13.)

In or about March 2001, PRERS notified Dashiel that it planned to eliminate the ISC

position in Shelton (i.e., the job she and Schell held) and that she and Schell, who is Caucasian,

would be terminated when the Shelton facility closed in October 2001.  (Id., ¶ 16.)  PRERS also

informed Dashiel that only the transportation services component of its international operations

was being transferred to the Valhalla facility and that those services were going to be handled by

International Transportation Counselors ("ITCs") at that location.  (Id., ¶ 17.)  Because Dashiel

and Schell's primary job function was destination services – and not transportation services –

neither was offered the option of automatically transferring to the ITC position in the Valhalla

facility.  (Id., ¶ 18.)  Both Dashiel and Schell were offered the opportunity to "post[] for any

other jobs in Valhalla if they wanted to."  (Id.)  All employees who wanted to transfer to Valhalla

to work as an ITC had to apply for that position.  (Id., ¶ 19.)

On August 31, 2001, Prudential formally notified Dashiel that, due to the previously announced reorganization, her job was being eliminated and that her employment would be terminated, effective October 31, 2001, unless she secured another position with PRERS or Prudential. (Id., ¶ 25.) On October 2, 2001, Dashiel applied for an open ITC position in the Valhalla office and, on the next day, interviewed for that position with Kershaw and Fields. (Id., ¶ 29.) Kershaw, who, like Dashiel, is African-American, supervised all of the ITCs in the Valhalla facility and was the sole decision-maker with respect to who would receive job offers for any open ITC position in Valhalla. (Id., ¶ 30.)

On October 3, 2001, after her interview with Kershaw and Fields, Dashiel sent them an e-mail, in which she *voluntarily withdrew* her application for the ITC job in the Valhalla office. (Id., ¶ 32.) Because Dashiel withdrew her application, Kershaw no longer considered Dashiel for the ITC position and did not offer her that job. (Id.) Most notably, Dashiel does not accuse Kershaw of discriminating against her in any way or in connection with the termination of her employment with PRERS. (Id., ¶ 34.) To the contrary, Dashiel admits that she had a "[v]ery good" working relationship with Kershaw. (Id.)

Because Dashiel did not successfully post for or obtain any other position within PRERS or Prudential, her employment was terminated effective October 31, 2001. (Id., ¶¶ 2, 36.) Similarly, Schell, the other ISC in Shelton who performed job duties that were similar to Dashiel's duties, did not apply for any other position within PRERS or Prudential and, like Dashiel, was terminated from employment on October 31, 2001. (Id., ¶ 37.) Over 400 employees lost their jobs when the Shelton facility closed. (Id., ¶¶ 2, 20.)

After Dashiel withdrew her application and took herself out of consideration for the ITC position in Valhalla, Kershaw hired Martha Bobian ("Bobian"), who is African-American, for

6

the vacant ITC position. (Id., ¶ 35.) With the addition of Bobian, in late-2001, four out of the six ITCs reporting to Kershaw in Valhalla were African-American. (Id., ¶¶ 27-28, 35.)

On September 18, 2001, Dashiel filed a complaint of race discrimination with the CHRO. (Id., ¶ 39.) In her CHRO complaint, Dashiel alleged that PRERS failed to select her for the ITC job in Valhalla and terminated her employment because of her race. (Id.) After its initial merit assessment of Dashiel's complaint, the CHRO dismissed it because there was no evidence to support her claim. (Id., ¶ 40.) Thereafter, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the CHRO's determination and issued Dashiel a Dismissal and Notice of Rights. (Id., ¶ 41.) Undeterred by these agencies' findings, Dashiel commenced this lawsuit.

### III. ARGUMENT

### A.    THE APPLICABLE SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment provides a procedure whereby unfounded claims − such as those in this case − can be eliminated without recourse to a costly, lengthy and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a
> disfavored procedural shortcut, but rather as an integral part of the
> Federal Rules as a whole, which are designed to 'to secure the just,
> speedy and inexpensive determination of every action.'

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. A moving defendant need only show the absence of proof of any of the essential elements of the plaintiff's

case. Id. at 323. Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, to withstand the motion, the nonmovant must do more than present evidence that is merely colorable, conclusory or speculative; it must present "concrete evidence from which a reasonable juror would return a verdict in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (nonmoving party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture"). In the end, the nonmovant must do more than show "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Applying these standards to the present case, it is clear that the Court should grant summary judgment dismissing Dashiel's Amended Complaint because the record is wholly devoid of any evidence from which a rational jury could find that PRERS' failure to select her for the ITC job in Valhalla or her termination were based on her race, or that she can prove her state law contract and tort claims.

**B.     THE COURT ONLY HAS JURISDICTION OVER DASHIEL'S RACE DISCRIMINATION CLAIM IN CONNECTION WITH HER TERMINATION AND FAILURE TO SELECT HER FOR THE ITC JOB IN THE VALHALLA FACILITY**

In the Amended Complaint, *all* the factual allegations relate to the circumstances surrounding PRERS' failure to select Dashiel for the ITC job in Valhalla and her termination in October 2001. (Am. Compl, ¶¶ 10-29.) Nonetheless, in Count One of the Amended Complaint, which alleges race discrimination in violation of Title VII, it is unclear whether Dashiel also seeks to assert a claim that she was discriminated against with respect to the terms and conditions

of her employment. (See Am. Compl., ¶ 31(j)-(n).) To the extent Dashiel seeks to include such a claim it must be dismissed because it was never submitted to the CHRO and EEOC; thus, the Court does not have jurisdiction over that claim.

The filing of a charge with the EEOC is a statutory precondition to a private civil action under Title VII. McDonnell Douglas, 411 U.S. 792, 798 (1973); Miller v. IT&T Corp., 755 F.2d 20, 25-26 (2d Cir.) (concluding that district court lacked jurisdiction over failure to rehire claim that was not included in plaintiff's EEOC charge), cert. denied, 474 U.S. 851, reh'g, denied, 474 U.S. 1015 (1985). In light of this strict exhaustion requirement, courts have routinely declined to consider claims not included in an EEOC charge. Foster-Bey v. Potter, 296 F. Supp. 2d 195, 202-03 (D. Conn. 2003) (dismissing failure to promote and hostile work environment claims because they were not included in plaintiff's EEOC complaint); Criales v. American Airlines, Inc., 1998 WL 661473, at *2 (E.D.N.Y. July 20, 1998) (concluding that there was no jurisdiction over plaintiff's harassment claim where EEOC charge only alleged discrimination in connection with his discharge), aff'd, 216 F.3d 1071 (2d Cir. 2000) (table); Bawa v. Brookhaven Nat'l Lab., 968 F. Supp. 865, 869 (E.D.N.Y. 1997) (dismissing Title VII harassment claim because it was not included in plaintiff's EEOC charge), aff'd, 201 F.3d 430 (2d Cir. 1999) (table); Reich v. New York Hosp., 513 F. Supp. 854, 859 (S.D.N.Y. 1981) (holding that refusal to reinstate claim was separate from claim challenging dismissal). This Court should reach the same conclusion here.

On September 18, 2001, Dashiel filed a complaint with the CHRO (dual-filed with the EEOC), alleging that she was "terminated" and "not hired/promoted" based upon her "race" and "color." (Def.'s 56(a)(1), ¶ 39; Dashiel Dep. Ex. 15.) She did not check any of the "blanks" for "discriminated against in terms and conditions of employment," "harassment," "earning a