UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULA DASHIEL, : | |
| Plaintiff, : | Civil Action No. 3:02CV1231(CFD) |
| : | |
| v. : | |
| : | |
| THE PRUDENTIAL INSURANCE : | |
| COMPANY OF AMERICA, : | |
| Defendant. : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Paula Dashiel brings this discrimination action against her former employer, the Prudential Insurance Company of America ("Prudential"). She contends that she was wrongfully terminated from Prudential Real Estate and Relocation Services ("PRERS"), a division of Prudential, because she is African-American and from Trinidad. Dashiel's amended complaint alleges violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*, and Connecticut common law causes of action for breach of an implied contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent misrepresentation, and wanton and willful violation of her rights. Prudential seeks summary judgment as to each count of the complaint. For the following reasons, that motion is granted.

1

I.   **Background**[1]

Paula Dashiel was hired on September 7, 1999 for a position as an International Services Coordinator ("ISC") by the PRERS International Division, in Shelton, Connecticut. As an ISC, Dashiel "worked with [PRERS'] corporate clients to help their employees who were relocating overseas." (Dashiel Deposition, p. 22-23). More specifically, the PRERS job description for the position was: "To work closely with the International team in the support of all services related to an international assignment. Primary interface is with the network of supplier partners and team members. This position will provide a single point of coordination for one or more international services (destination, transportation and/or visa/immigration)." (Plaintiff's Ex. 2; and Declaration of Kathleen Morris, ¶ 3).

In late 1999, PRERS announced a reorganization and relocation project called "Project Firebird." The relocation involved "a migration of our Operations and Systems groups to a state-of-the-art facility in Phoenix, Arizona." (Plaintiff's Ex. 12). Prior to the relocation, the Operations and Systems groups were located in facilities in Atlanta, Chicago, Houston, Irvine, and Shelton. The International team in Shelton was one of these groups that would move with Project Firebird.

Through a January 1, 2001 letter, Dashiel was offered an opportunity to transfer to the Phoenix location while maintaining the same job title and salary. That letter specifically stated that it did "not constitute an employment contract and [did] not guarantee your employment for any specific period of time. Your employment at Prudential continues to be at-will."

---

[1] The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

(Defendant's Ex. B5). Dashiel and the other employees who received similar letters were given ten days to indicate their decision. In order to make their decision, employees were also referred to the PRERS Relocation Policy, which discussed employee eligibility, assistance with moving and finding a home.

In a letter issued on January 11, 2001, PRERS retracted its relocation offer. That letter, which was sent to Dashiel as well as others with similar jobs stated that the prior offer:

> was based on the business decision that this transfer was in the company's best business interests. Due to a reevaluation of the circumstances, PRERS has decided to reconsider other locations for your position and the International Transportation business. . . . As a result of this change in strategy . . . the January 1, 2001 letter is null and any responses to this letter also will be null and void.

(Defendant's Ex. B6).

In March 2001, Dashiel was informed that PRERS planned to eliminate the ISC position at its Shelton facility, when that location closed in October 2001. Dashiel was informed that the transportation services component of the international team would be transferred to another Prudential facility in Valhalla, New York. The work would be handled by International Transportation Counselors ("ITCs"). Dashiel was then asked by Mike Cazelot, Vice President of International Transportation, and Rosemary Moreno, Director of Human Resources for the Shelton facility, to apply for an ITC position in the Valhalla facility. On April 16, 2001, Dashiel sent Cazelot and Moreno an email, which stated that "after thinking I have decided that I am not interested in making a lateral move at this time. If any senior positions were to become available, I would be most interested to apply." (Defendant's Ex. B10).

Through an August 31, 2001 letter, PRERS officially notified Dashiel that her position would be eliminated and she would be terminated on October 31, 2001 if she did not secure

3

another position with PRERS or Prudential. That letter also informed Dashiel of her eligibility for a severance package and retention bonus. To be eligible, Dashiel was required to agree to the sign the Separation Agreement and General Release, which she never did.

On October 2, 2001, Dashiel decided to apply for an ITC position in Valhalla. The next day, she interviewed with Debra Kershaw, who is African American and was the ITC supervisor. Later that day, Dashiel sent an email to Kershaw retracting her application because she did "not want to work with the group that discriminated against me." (Defendant's Ex. B13).

Dashiel was terminated on October 31, 2001. According to Prudential, Dashiel was one of more than 400 employees who lost their jobs with PRERS at that time.

Joan Schell, who is Caucasian, was the only other ISC in Shelton. Like Dashiel, she was informed that her position would be eliminated and she would be terminated, and that she too could apply for an ITC position at the Valhalla facility. According to Prudential, there were six ITC positions at the Valhalla facility, which were filled by three African American women, and three Caucasian women.

On September 18, 2001, Dashiel filed a complaint against Prudential with the Connecticut Commission on Human Rights ("CHRO"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"). That complaint alleged race discrimination in the termination of her employment. That complaint was dismissed on December 28, 2001. The CHRO found that "there is no reasonable possibility that further investigation will result in a reasonable cause finding." (Defendant's Ex. B16). In April 2002, the EEOC adopted the findings of the CHRO and informed Dashiel of her right to sue in federal court. This action followed.                                                                                 **II.**

4

**Summary Judgment Standard**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden

of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Maffucci, 923 F.2d at 982.

The Court exercises caution in granting summary judgment in favor of an employer in employment discrimination cases "when, as here, the employer's intent is at issue." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citing Gallo v. Prudential Residential Servs., Ltd. Pshp, 22 F.3d 1219, 1224 (2d Cir. 1994)). However, in order to defeat a defendant employer's motion for summary judgment, a plaintiff employee must offer "concrete evidence from which a reasonable juror could return a verdict in his favor" and may demand a trial simply because the central issue is the defendant employer's state of mind. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) (internal quotations omitted).

**III.    Discussion**

Dashiel argues that she was discriminated against by Prudential because of her race and national origin in violation of Title VII, 42 U.S.C. § 2000 *et. seq*. Prudential seeks summary judgment on Dashiel's discrimination claims. Prudential argues first that to the extent that Dashiel asserts a race discrimination claim based on the terms and conditions of her employment, the Court lacks jurisdiction because Dashiel did not exhaust her administrative remedies as to that claim in the CHRO. Rather, Dashiel only challenged the termination of her employment on

the basis of race discrimination in the CHRO. Second, Prudential argues that Dashiel cannot as a matter of law establish a prima facie case of race discrimination. Third, Prudential argues that even if Dashiel could establish a prima facie case of race discrimination, PRERS had a legitimate non-discriminatory reason for not selecting Dashiel for an ITC position and for terminating her employment. Finally, Prudential argues that Dashiel has no evidence of pretext to support the argument that she was actually terminated because of her race.

### A.     Jurisdiction and Exhaustion of Administrative Remedies

Title VII requires that complainants exhaust their administrative remedies with the EEOC before filing in federal court. 42 U.S.C. § 2000e-5(e). "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge." Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

Dashiel's complaint with the CHRO alleged retaliation, wrongful termination, and failure to be hired or promoted, on the basis of race or color. (Defendant's Ex. B15). The CHRO provided Dashiel with a standard form on which she could check boxes corresponding to different types of discrimination. That standard form is used by the agency to investigate alleged discrimination. On that form, Dashiel did not check the boxes for discrimination based on national origin, which would include discrimination against her for her Trinidadian accent. She also did not check the box for discrimination in the terms and conditions of Dashiel's employment. (Defendant's Ex. B15). Because these claims were not brought before either the

7

CHRO or the EEOC, they are outside of the Court's subject matter jurisdiction, and will not be considered.

### B.  Prima Facie Case of Race Discrimination

The analytical framework for addressing alleged race discrimination is set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas rubric, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. To do so, a claimant must show that: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See id.; see also Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). If the plaintiff satisfies these requirements, the burden then shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. McDonnell Douglas, 411 U.S. at 802.

Once the defendant demonstrates a non-discriminatory reason for its decision, the burden again shifts to the plaintiff, who now must show that the defendant's proffered reason is a mere pretext for discrimination. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 2003 WL 1988534 (Oct. 6, 2003). To survive summary judgment, the plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994))11. The McDonnell Douglas burden-shifting framework is only

necessary when the plaintiff has failed to offer direct evidence of discriminatory intent. See Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002) ("If a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.") (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)); Johnson v. New York, 49 F.3d 75, 78 (2d Cir. 1995) ("The McDonnell Douglas framework, which guided the district court's analysis, is intended to assist the fact-finding process when the plaintiff is unable to present direct evidence of discrimination."). Here, Dashiel has not offered any direct evidence of discriminatory intent; therefore, the McDonnell Douglas inquiry is appropriate.

It should be noted at the outset of this inquiry that "a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.'" Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (quoting McGuinness v. Lincoln Hall, 263 F.3d 49, 52 (2d Cir. 2001). "Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances 'give rise to an inference' of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir. 1994).

Here, there is no question that Dashiel belongs to a protected class (because she is an African-American), and that based on her positive evaluations and invitations to apply for further employment, was qualified for both the ISC and ITC positions. It is also not disputed that she was terminated. Whether Dashiel can demonstrate that she was terminated under circumstances that give rise to an inference of discrimination requires closer analysis.

Dashiel argues that an inference of discrimination can be drawn from the differing

treatment of white PRERS employees. "A showing that the employer treated a similarly situated employer differently is 'a common and especially effective method . . .'" of showing an inference of discrimination. <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001), quoting <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d Cir. 2001). Such a showing requires Dashiel to establish that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 39 (2d Cir. 2000). "What constitutes "all material respects" therefore varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." <u>Id.</u> at 40. "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." <u>Id</u>. at 39.

  Dashiel makes a number of assertions to support her argument that she was treated differently than similarly situated white employees. First, Dashiel asserts that in May 2000, a Caucasian man, Bret Wall, was hired as an International Assignment Manager ("IAM"), and took over the J.P. Morgan account that Dashiel had previously worked on. The record, however, establishes that Wall was hired as an IAM to work in the Phoenix facility, and was only at the Shelton facility for three months of training. Second, Dashiel asserts that she was overlooked for a position in the other Prudential facilities, while others – none of whom were African American – were hired. Third, Dashiel asserts that new hires and inter-company transfers were made for ITC and IAM positions in the Valhalla facility, and that there is no evidence that the inter-company transfers were required to apply. As to the latter two assertions, it is questionable whether such comparisons fall within the "all material respects" standard applied in this circuit

because the positions the comparators held were distinct from Dashiel's and were at different facilities.[2]  Such a consideration would likely be a question of fact for a jury to consider.

Assuming for the purposes of this ruling, however, that Dashiel can establish a prima facie of discrimination, the Court finds that Prudential has established a legitimate nondiscriminatory reason for terminating Dashiel and not rehiring her as a ITC.  There is no genuine issue of material fact that such a reason is pretext.

Prudential argues that it terminated Dashiel along with many others as part of a corporate relocation and elimination of the ISC position.  Also, Dashiel was provided the opportunity to apply for an ITC job in Valhalla.  According to Prudential, it was Dashiel herself who decided not to apply for the position.  When she did decide to apply for the position, she was interviewed the next day.  The fact that she was not offered the position in Valhalla resulted from Dashiel's own withdrawal of her application.   Although Dashiel argues that her email to Kershaw was not a withdrawal of her application, she does not present any evidence that counters the unambiguous language of that email indicating her intent to retract her application.  The record reveals that Prudential engaged in a series of business decisions that involved the PRERS Shelton location, and that Prudential had a policy of encouraging employees to take advantage of career opportunities within the company.

Dashiel has not presented evidence sufficient to create a genuine issue of material fact "that the legitimate reason[] offered by the defendant were not its true reason[], but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143

---

[2] It is also worth noting that Dashiel's closest comparator, Joan Schell, who is Caucasian, experienced the same treatment as Dashiel.

(2000). Dashiel has not presented evidence that she, in particular, was terminated or was overlooked for a transfer position such that a reasonable fact-finder could conclude that discrimination motivated those decisions. See Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir. 2001),citing Reeves, 530 U.S. at 146-48.

Dashiel, therefore, does not assert a Title VII, race discrimination claim. Summary judgment is granted for the defendants.

**IV.    Conclusion**

Because it has disposed of plaintiff's Title VII claim, the only federal claim before it, the Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3). Both the Second Circuit and the Supreme Court agree that when all federal claims are dismissed, the "state claims should be dismissed as well." Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

The motion for summary judgment **[Doc. #65]** is **GRANTED**, and judgment is entered for the defendants. The clerk is ordered to close this case.

SO ORDERED this  17th  day of March, 2006, at Hartford, Connecticut.

                                              /s/ CFD
                                              **CHRISTOPHER F. DRONEY**
                                              **UNITED STATES DISTRICT JUDGE**